JESSE L. BLALOCK *et al.*, plaintiffs in error, *vs.* JOHN PHIL-
LIPS, defendant in error.

Plaintiff, in the Court below, sold to defendants four bales of cotton, while
Confederate money was the currency, and had a market value, and was
to receive that currency in payment. Defendants delayed payment
till after the Confederate armies had surrendered, when one of them,
with knowledge of the surrender, visited the plaintiff at his residence
in the country, and paid the debt in Confederate currency, at a time
when plaintiff swears he had no knowledge of the surrender.

1. *Held*, That in such case, it is a question proper for the jury to deter-
mine, whether defendant practiced a fraud upon plaintiff by taking ad-
vantage of his ignorance, and misleading him, and inducing him to
receive the notes in payment, when defendant knew they were in fact
of no value, by reason of the failure of the Confederacy.

2. If plaintiff was induced by fraud to take the notes, and they had ceased
to have any market value, when he learned the fact of the surrender,
he was not bound to tender them back to defendant to enable him to
maintain an action for the amount due him for the cotton.

3. The plaintiff, in this case, waives the tort committed by the defendants
in forcibly taking the cotton from his gin house, by the form of action
brought; and can only proceed for the price of the cotton.

4. The conduct of certain jurors who, while they were charged with the
case, conversed with a person not on the jury, in presence of a number
of others about the case, and used expressions favorable to the right of
the plaintiff to recover, assigning as a reason that defendant, sworn as
a witness, had contradicted himself, when in fact he had not, is highly
reprehensible, and a new trial should have been granted by the Court
below on that account. Jurors should speak to no one, nor permit any
one to speak to them about the case, while charged with its considera-
tion.

Motion for new trial. Misconduct of Jury. Decided by
Judge COLLIER. Fayette Superior Court. March Term,
1868.

Phillips brought an action against Blalock and John T.
Hewell, as partners in cotton-buying. It was called, in the
declaration and in the bill of exceptions, " an action on the
case," but, in fact, it contained four counts, in each of which
it was averred that Phillips had sold and delivered to said
defendants, at their special instance and request, two thou-
sand pounds of lint cotton; two of these counts were upon
special promises to pay, in one $30 per 100 lbs., and in the

other $50 per 100 lbs., and the other two were upon promises to pay what the cotton was reasonably worth, the one putting its value at $30 per 100 lbs., and the other putting it at $50 per 100 lbs.   The defendants plead that they purchased said cotton from the plaintiff for Confederate currency, and with it had paid him for it.

The evidence was substantially this:   All the parties were sworn and agreed, that on the 7th of March, 1865, plaintiff sold to the defendants four bales of cotton, weighing five hundred pounds each, at one dollar per pound, to be paid in Confederate currency, and took their note for the $2,000 00, agreeing to keep the cotton in his gin-house, at defendants' risk, till they called for it, and that plaintiff set it apart in his gin-house for them; on the 3d of May, 1865, Blalock, *en route* to a justice's court, called on plaintiff, and paid him the note, and $20 00 in said currency, as interest; that about the last of July, 1865, Blalock called for the cotton; plaintiff refused to deliver it, saying the currency was worthless when he took it, and that he would not deliver the cotton, but was willing to arbitrate the matter; that afterwards, on the 3d of August, 1866, the defendants and others went to the gin-house of plaintiff, at night, armed, and by force, took the cotton and carried it away.

The plaintiff swore that he called for payment of said note several times, but, by reason of the absence of one or the other of the defendants, it was not paid, while the defendants testified that they could and would have paid him, but he said he only wished to know that the note would be cashed on demand, as he wished, with its proceeds, to purchase a slave from one McIntosh, and they showed, by another, an offer to pay, and that plaintiff said he did not then wish the money.   Plaintiff also swore that, when he took the currency from Blalock, he knew nothing of the surrender of the Confederate armies, nor learned it till, on the same day, he went to trade with McIntosh, who gave him the information, and refused to receive the currency, but Blalock swore that when he paid the note, he told plaintiff that Lincoln was dead, and that Lee had surrendered.   The defendants both testified,

that after plaintiff had shewn Blalock the cotton, and refused to deliver it to him, Hewell had bought out Blalock's interest, by giving him his note for $360 00 in gold, which was subsequently paid off by part of the proceeds of the cotton, when Hewell sold it, and that, while it was true Blalock was present when the cotton was forcibly taken from the ginhouse, he had no interest in the cotton. The reasons for his going, given by Blalock, was, in one instance, because he wished to look after his wagon and team, which was hauling the cotton, and, in another, that he went because some of the boys who went along were drinking, and their parents would not allow them to go unless he went.

The value of cotton was shewn to range from twenty-six cents to forty-three cents per pound, during 1865. There was no evidence as to the value of Confederate currency, except as aforesaid, and that, soon after the Federal army took Macon, Georgia, $10 00, in gold, bought $2,500 00 in such currency.

Defendants' attorneys requested the Court to charge the jury, that, if Blalock had sold out his interest in the cotton to Hewell before Hewell took it, Blalock was not liable in this form of action. The Court refused so to charge, but charged that, if, under the rules which he had laid down, (what they were does not appear,) the title and possession had not passed to the defendants, and the defendant, Blalock, aided or assisted, in any way, in taking the cotton, then he was liable in this form of action; but if the title and possession had passed, or the defendant, Blaclock, did not aid or assist in taking the cotton, then he was not liable.

The plaintiff had a verdict for $820 97. Thereupon, defendants' attorneys moved for a new trial, upon the grounds that the verdict was contrary to the law and evidence, that the Court erred in not charging as requested, and in charging as he did, and because of misconduct of several of the jurors.

It was shewn, by the affidavit of several persons, that, during said trial, Isaac Hastie and James Lynch, two of the jury, said, in the presence of persons at table with them, that

they had heard the testimony of said defendants, that they both first swore that the cotton belonged to Blalock, and then swore it was not his, and that, according to that testimony, they did not see how they could do otherwise than find for plaintiff; that the currency was worthless when paid, it being after the surrender of Johnson's army, and that plaintiff should be paid for his cotton.

It was shewn by another affidavit that, during said trial, H. Smith and James Lynch, two of the jurors, spoke to Wright Martin concerning said cause, Smith saying it was "a dead case," and Lynch saying "it was a worse case than the Field's land case," (which had just been tried,) and Smith asked Martin what he thought of the case. The affiants stated in their affidavits that they did not communicate these things to the defendants or their attorneys till after the verdict, and Blalock, and Q. C. Grice, his attorney, affirmed that they knew nothing of said facts till after said verdict.

In reply, the plaintiff's attorney submitted the affidavit of said Hastie and Lynch, in which it was stated that, at said table, the landlady asked what had been done in said cause, when Lynch replied that it was not yet decided, that they had not yet gotten through with the evidence; that the lady said plaintiff was an hard working old man, and should be paid for his cotton; to which Lynch replied, that plaintiff seemed to be a smooth, nice old man, and he hoped justice would be done; and further, that the only thing he said to Wright Martin was, (while he was sending word by his servant why he could not go home,) that the cause was a more tedious one than the other, alluding to the length of the argument, etc. Hastie said that he replied to said landlady that he thought plaintiff would get pay for the cotton, unless the evidence on the other side was strengthened, as one of the parties had contradicted his own evidence. They both affirmed that this was all they said; that they did this inadvertently in reply to said landlady, not knowing it was wrong, and that it had nothing to do with their finding, which was honestly made up from the evidence. There was also an

affidavit by three citizens that said Hastie and Lynch were honest, intelligent and firm men.

The Court refused the new trial, and of this complaint is here made, the assignments of error being the same as the grounds for new trial.

GRICE, PEEPLES and STEWART, for plaintiffs in error.

TIDWELL and FEARS, for defendant in error.

BROWN, C. J.

It appears from the evidence in this case, that the cotton was not paid for as originally contemplated at the time of the sale, and that Phillips extended indulgence to the defendants below, and the Confederate notes were not in fact paid till after the surrender of the Confederate armies. The evidence is in conflict as to Phillips's knowledge of that fact, when he received the notes. He swears positively that he had no such knowledge, while Blalock swears that he informed him of General Lee's surrender at the time.

It was for the jury to reconcile this conflict if possible, and if not, to consider the credibility of the witnesses, their means of knowing the facts about which they testified, etc., and determine who was most entitled to credit.

1. If Phillips received the Confederate notes in payment for the cotton, with knowledge of all the facts, and the trade was fairly consummated, it is not the business of the Court and jury to undo what has been done. But if Blalock, who had not complied with the original terms of the contract, and had received indulgence, after he learned that the Confederate armies had surrendered, and that Confederate treasury notes were worthless, went to the residence of Phillips, in the country, and concealed the facts from him, and by false statements, or other fraudulent means, induced Phillips to receive the money in payment, he was guilty of fraud, and cannot insist upon the receipt of the Confederate notes by Phillips as payment.

2. But it is insisted that Phillips, having received the

Blalock *et al.*, *vs.* Phillips.

Confederate notes, was bound to tender them back to Blalock before he could maintain an action for the price of the cotton. If the notes were worthless when received by Phillips, or so nearly so, that they became worthless before he obtained knowledge of the surrender, and had an opportunity to tender them back, the tender was not necessary. We understand the rule to be, that a contract cannot be rescinded, without a return of the chattel, or currency, received, unless it is valueless to both parties. But if it is valueless, it need not be returned. 3 McL. C. C., 386. Hemp., 710. Cr. C. C., 427.

3. It was contended further, that plaintiff should have brought his action of trespass *vi et armis* for damages, as the cotton was forcibly taken from his gin house at night, by the defendants and others. Possibly, he could have maintained such action. But he had a right to waive the tort, and sue upon a contract, express or implied. Having done so, he can recover no damages for the tort, but is confined to his action *ex contractu*, and cannot recover damages beyond the value of the cotton, with interest. Revised Code, 2894.

4. The only remaining point requiring attention is the one relating to the conduct of certain jurors, which, we think, was highly reprehensible, and on that account a new trial should have been granted. It appears from the evidence that two of the jurors, while charged with the consideration of this case, not only conversed with persons, not jurors, about the case, but discussed its merits, and commented upon the evidence in presence of a number of persons at the table, and misstated it, by saying that the defendant, sworn as a witness, had contradicted himself, etc. A juror, while the case is on trial, should neither speak to any one, nor permit any one to speak to him about it. For the gross violation of this rule in this case, the Court should not only have set aside the verdict, but he should have inflicted exemplary punisment upon the delinquent jurors.

Judgement reversed.