Isaac S. Weaver 'vs. Christopher C. Shriver.

*Sale of Stock—Action of Deceit—Right of Action—*
*Evidence—Measure of Damages.*

An action on the contract and an action of deceit in procuring the contract cannot be joined.

The plaintiff's right of action for false representations in the sale to him of stock, is not affected by the fact that he has not complied with the terms of his contract by paying the full amount of the consideration for the stock purchased.

Where after the discovery of fraud in the sale of stock, the purchaser treats the contract as still in force, he cannot rescind the sale, but may bring an action of deceit, or waiving this, may avail himself of the fraud as matter of defense in reduction of damages, or in bar of a recovery in a suit on the notes for the purchase money.

Where in an action of deceit to recover damages for false representations in the sale of stock, it is shown that previous to the purchase by the plaintiff, he was in the employ of the company issuing the stock, and had the means of knowledge at hand, or readily accessible to him, by which he could have ascertained the price which the other stockholders had paid for their stock, and failed to make inquiry concerning the same, he must be deemed to have availed himself of such means, and be regarded as having notice of the true state of facts.

Where one has purchased stock and paid one half of its par value and given his notes for the other half, the measure of damages in an action of deceit for representing that the other stockholders had paid for their stock the full par value of one hundred cents on the dollar, when in fact none of them had paid more than fifty cents on the dollar, is not the amount paid in cash for account of the stock, by the plaintiff, but the amount of damage he has sustained as the direct consequence of the false representation.

In an action for false representations in the sale of stock, it is not required to prove the exact language used in the representations; proof of their substance and legal effect is sufficient.

In an action for false representations in the sale of stock which was paid for partly in cash and partly in notes secured by collaterals, if it be shown that there were false representations, the purchaser would be entitled to recover the value of the collaterals at the time they were deposited with the defendant.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exception.*——The plaintiff offered the two following prayers:

1. If the jury believe that the defendant falsely represented to the plaintiff, with knowledge at the time of the falsity of such representations, that the plaintiff, when he purchased the fifty shares of stock in The Loomis Filter Company at $100 per share, being par for the same, was paying the same price for said stock which all the other holders thereof paid, and that no shareholder had gotten his stock at any less figure, and that the plaintiff, believing such representation to be true, was actually induced by such false representations to purchase said fifty shares of stock, and to pay the defendant therefor the sum of $2,500 in cash, and to give for the balance of purchase money his two notes, one for $1,000, and the other for $1,500, and to transfer to him twelve shares of stock in the People's Bank, and a bond of The North Carolina Western Railroad, as collateral security for the payment of said notes, the plaintiff is entitled to recover in this action such amount as the jury may find the plaintiff has lost by the direct consequence of such false representation, not to exceed, however, the amount paid in cash for account of said stock and the value of The North Carolina Railroad bond and the People's Bank stock transferred to the defendant on account of the same, and in computing the value of said stocks and bond, it must be based on the

value of the same at the time the plaintiff was induced to part with the same by reason of the fraudulent representations.

2. If the jury find that the defendant, Shriver, represented to plaintiff, Weaver, that he could procure for him 50 shares of the stock of The Loomis Filter Company, for the sum of $100 per share, being the par value of the same, and that this was the amount paid per share for the same by all the other shareholders; and shall also find that this representation was false, and that the said Weaver, relying upon this representation, purchased said stock at the par value of $100 per share, and paid the defendant for the same in the manner set forth in the first prayer; and shall further find, at the time, that said Shriver had an option on the same stock sold to Weaver at $50 per share from Manning, and that after he induced Weaver to purchase he exercised his option and bought said stock from Manning at $50 per share, and then sold the same to Weaver for $100 per share; and shall find that by reason of such action Weaver has suffered damages, Weaver is entitled to recover such loss as may have been the direct result of such deception, not exceeding the amount paid in cash on account of said stock with interest and the value of the collaterals given for said stock, said value computed as of the date of delivery of the same to defendant, and it is no defense to plaintiff's right to recover, that the defendant was not benefited by such false representations.

The defendant offered the following prayers.

1. In order that the plaintiff may recover in this case, under the pleadings, it is necessary for the jury to believe upon the evidence:

*First.*—That at or before the sale of the fifty shares of stock mentioned in the evidence by the defendant to the plaintiff, the defendant represented to the plaintiff either

that all the stockholders had paid for the stock of the company, or that he was getting said stock at the same price it was sold to the balance of the stockholders, or that he was putting the plaintiff on the ground floor.

*Second.*—That said statements, or any of them, were untrue in fact.

*Third.*—That the defendant, at the time of making the representations, knew them, or any of them, to be untrue, or made them or either of them with a reckless disregard of their truth or untruth.

*Fourth.*—That the defendant, at the time of making the representations, intended to deceive the plaintiff.

*Fifth.*—And that the plaintiff materially relied on those representations to his prejudice and damage.

2. The jury are instructed that there was no obligation on the part of the defendant to disclose to the plaintiff the amount he paid or was to pay for the stock, in the absence of any question directed to that point on the part of the plaintiff, and that the fact that the defendant sold to the plaintiff stock for five thousand dollars, which had cost him but twenty-five hundred dollars, is of itself, no evidence of fraud, for which, under the pleadings in this case, the plaintiff can recover.

3. That the plaintiff cannot recover in this case, under the pleadings, unless the jury find from the evidence that the stock purchased by the plaintiff was at the time of the purchase by the plaintiff worth less than its par value, and as by the undisputed evidence in the case the stock was then worth its par value, their verdict must be for the defendant.

4. If the jury find from the evidence that the defendant made certain representations, different from those charged in the declaration, and did not make those charged in the declaration, the plaintiff is not entitled to recover, although the jury should find that the plaintiff understood the defendant to make the representations as laid.

5. If the jury find for the plaintiff, the measure of damages is the difference between the amount paid by the plaintiff and the then value of the stock, and in making up their verdict they have nothing to do with the value of the collaterals given by the plaintiff as security for his promissory note, as upon the undisputed testimony the contract of sale of the 50 shares of stock has not been rescinded by the plaintiff.

6. Even if the jury find that the representations alleged in the declaration, or any of them, were made by the defendant, and that such representations were untrue in fact, yet their verdict must be for the defendant, unless they further find that the defendant frauduently intended to deceive the plaintiff; and that in making up their minds upon the question of fraud, the jury are instructed that fraud is not to be presumed, and the burden of proof is on the plaintiff to overcome such legal presumption by evidence satisfactory to the jury.

The Court (RITCHIE, J.) rejected the prayers of the plaintiff and gave the following instruction:

" The cause of action in this case being founded on the procurement of a contract to purchase fifty shares of stock at the price of $100 per share by the alleged false and fraudulent misrepresentations of the defendant and not for damages sustained thereby on a rescission of said contract; and it appearing on the face of the declaration that the plaintiff gave his promissory note for $2,500 of the purchase money under said contract; and there being no evidence to show that any part of the said note has ever been paid, the jury is instructed that on the pleadings and evidence the plaintiff is therefore not entitled to recover in this action."

The plaintiff excepted to the rejection of his prayers, and to the instruction given by the Court. The verdict and judgment being for the defendant, the plaintiff appealed.

The cause was argued before ROBINSON, C. J., BRYAN, PAGE, ROBERTS, MCSHERRY, BOYD and BRISCOE, J.

*Fielder C. Slingluff* (with whom was *William T. Donaldson,* on the brief,) for the appellant.

It must be borne in mind that the alleged discovery of the fraud was made *before the contract was completed,* and further, that the appellant *has not and never did have possession of the stock which he purchased.* The seller, the appellee, retained possession of the same.

The Court based its opinion upon the fact that "the declaration does not allege any rescission of the contract, nor return or tender of the stock bought, nor any effort to restore the status of the defendant."

Manifestly the appellant could not return or offer to return the stock which he did not have. But in his declaration he states:

"That immediately upon the discovery of said false and fraudulent representations he demanded back his promissory notes for $1,000 and $1,500, respectively, and the collaterals given therefor, and has several times since demanded the return of the same, but the defendant refused to surrender the same."

Now, if this were a case where the contract had been completed and the appellant was in possession of the stock, then it is admitted that in order to recover back what he paid, he would first have to return the stock, and in this way rescind the contract in order to get back what he has paid.

It being admitted that the stock is in the possession of the appellee, all the appellant can do, in order to annul or rescind the contract, is to say to the defendant, " give me back all that I paid you for the worthless stock you got me to buy under fraudulent representations, and, as you have the stock in your possession, you can keep it; and in this way the contract is rescinded and the *statu quo* is restored to both of us."

" The amount that I paid you is the $2,500 cash and the value of the North Carolina Western Railroad bond, and

the People's Bank stock which I gave you, and which you refuse to return to me."

This is all that is asked in the declaration, and the two prayers of the appellant expressly limit the recovery to this amount.

When the appellant discovered the fraud he demanded his fifty shares of stock, and his collaterals, because he had paid the same amount for it the other stockholders had paid, and he thought he was entitled to have it.

When the appellee declined to deliver the stock to him, he then rescinded the contract and demanded back all he had paid for the same. If he had had possession of the stock he would have returned the same. The fact that the appellee has it in his own possession, puts him in the same position he would be in if appellant had returned it to him.

The rescission was complete, and the declaration in its terms states that the appellant sues because the appellee refused to give back the collaterals and the promissory notes.

The Court below says that there has been no rescission, because there has been no repudiation of the contract. It is difficult to see how there could be a more decided repudiation than the declaration discloses on its face, and evidence shows to sustain it.

The alternative proposition is the affirmance of the contract, and the declination to pay the balance of the purchase money, and then, in the language of the Court, to wait until the appellant is sued for the balance of the purchase money and then recoup the damages he may have sustained by reason of the fraudulent misrepresentation.

This is practically no remedy at all, because if the appellee does not see proper to sue, there can be no recoupment, and as in this case he can hold on to the money he has been paid, sell the collaterals, and the appellant would be remediless. Surely, the law never contemplated

such result as this, because the frauds were discovered before the contract was completed. There must be a remedy, and it can only be in the way the appellant has selected to make it available.

The declaration and the prayers in this case are based on the decision of this Court in the well considered case of *McAleer vs. Horsey*, 35 *Md.*, 439.

See *Babcock vs. Case*, 61 *Pa. State*, 430, on the question of rescission.

When demand was made upon the appellee for the stock, and he refused to deliver, the appellant was justified in treating the contract as rescinded. 8 *West. R.*, 67 (*Ill.*, 1887).

It was not necessary to state in apt terms in the declaration that the appellant rescinded the contract. "If a man says another has by *fraud* obtained from him a sum of money, and that he is entitled to recover it back from the party who thus obtained it, he must *mean* that he has been *cheated out of that sum*, or in other words, that he has suffered loss to that extent."

"Substance and not form is what the Code makes essential in pleading." *McAleer vs. Horsey*, 35 *Md.*, 458.

And, upon the same principle, when the same man sues for the return of the money thus fraudulently obtained from him, he must mean that he repudiates the contract, without saying so in express language.

The Court below took the view that because the appellee had sued the appellant on the unpaid promissory notes, this case could not be maintained. That suit was brought after the present one was instituted, and it will be time enough to determine its merits when it is tried. It may never be tried.

It may be stated, however, if in this case the jury should find the transaction to be a fraudulent one, as alleged, and should award to the appellant a return in damages of the amount paid on account of such fraudulent contract,

thereby finding that such contract was void, it would be extremely difficult for the appellee to recover on account of said contract on the theory that it was an outstanding one.

If the person defrauded elects to rescind he must return or offer to return what *he received under it,* so that the parties may be placed *in statu quo* as far as practicable. But if the thing received by the defrauded party has perished without his fault, or is of no value, or if for any sufficient reason it cannot be returned, then the contract may be rescinded without an offer to return, or compensation may be made. *Neblett vs. Macfarland,* 92 *U. S.,* 101; *Groff vs. Hansel,* 33 *Md.,* 161; *Flynn vs. Allen,* 57 *Pa. State,* 482; *Crosland vs. Hall,* 33 *N. J. Eq.,* 111; *Baker, et al. vs. Lever, et al.,* 67 *N. Y.,* 304; *Babcock vs. Case,* 61 *Pa. St.,* 427; *Hammond vs. Pennock,* 61 *N. Y.,* 145.

*Edgar H. Gans,* and *John T. Mason, R.,* for the appellee.

The plaintiff's prayers fail to submit to the jury, to find whether the plaintiff had the means at hand to ascertain the truth of the alleged false representations; they ignore entirely that part of the testimony which shows that the plaintiff was superintendent of the New York office, and was in constant contact with the president of the company, and had, therefore, ample means of ascertaining the truth or falsity of the statement, during the seven weeks he was in New York, prior to his purchase of the stock. *Buschman & Cook vs. Codd,* 52 *Md.,* 208; *Robertson vs. Parks,* 76 *Md.,* 123, 132; *Manning vs. Albee,* 11 *Allen,* 522.

It does not appear that Shriver had any special means of knowing what price had been paid by the other stockholders.

Further, these prayers do not correctly state the rule as to the measure of damages. The rule is that in cases of

this kind, the plaintiff is entitled to recover such damages as are the natural and necessary result of the false representations. *Buschman & Cook vs. Codd,* 52 *Md.,* 209.

Now while this rule is in substance laid down in the prayer, it is qualified by the following language: "Not to exceed, however, the amount paid in cash for account of said stock, and the value of the North Carolina Railroad bond and the People's Bank stock, transferred to the defendant on account of the same." This is in effect to authorize the jury to award the plaintiff the full value of the collaterals, as well as the $2,500 paid on account of the purchase.

This was manifestly wrong, as the plaintiff had made his election to affirm the contract and keep the stock, and his contention is that the stock sold him at $100 was only worth $50, not that it was worthless altogether; the damage, by his own showing, therefore, was fifty dollars per share on his stock, and this fifty dollars, the pleadings and evidence show that he had never paid, and had, therefore, not sustained the damage, or, in fact, any damage whatever.

Moreover, having affirmed the contract he could not demand the collaterals or recover them in this action, his notes being unpaid.

The defendant, in his third prayer, asked for a verdict on the theory that granting that the representations had been made as alleged, yet if the stock was worth par at the time of the sale, there could be no damage.

There can be no doubt that this plaintiff, assuming for the sake of the argument that he has a cause of action, has mistaken his remedy in the present state of the facts.

In cases of this kind, the party claiming to have been defrauded has his option of acquiescing in or avoiding the contract; if he desires to avoid the contract he must exercise his option of rescission immediately upon the discovery of the fraud, and failing to do this he is bound by the

contract and cannot repudiate it. *Clements vs. Smith's Adm'rs,* 9 *Gill,* 160; *Hoopes vs. Strasburger,* 37 *Md.,* 402; *Dellone vs. Hull,* 47 *Md.,* 115; *Groff vs. Hansel,* 33 *Md.,* 166; *Grymes vs. Sanders,* 93 *U. S.,* 62; *Pence vs. Langdon,* 99 *U. S.,* 581.

The appellant has fully acquiesced in the contract in this case, and elected to ratify it in spite of the alleged frauds, and has demanded from the defendant the delivery of the goods purchased. He is, therefore, bound by the terms of the contract and cannot repudiate its obligations; but by the allegations in his pleadings, he shows that the half of the purchase money for which notes were given, had not been paid.

If the plaintiff should recover in this case he could not, of course, set up the same defense in the action now pending by Shriver on the promissory notes given for the unpaid balance due on the contract. That would be to recover twice on the same cause of action. The recovery in this suit would be a bar to any subsequent use of the alleged fraud, either as a sword or a shield. *Beall vs. Pearre,* 12 *Md.,* 550; *Burnett vs. Smith,* 4 *Gray,* 50.

It is clear that the appellant could not maintain trover for the collaterals, unless he had chosen to rescind the contract, and this he has not done. *Kimball vs. Cunningham,* 4 *Mass.,* 505.

In any aspect of this case it is submitted that the plaintiff could not recover. The declaration and the proof show that the representations, even if made, were of such a nature that the appellant might by due diligence have informed himself of the value of the stock and of the price at which the other stockholders had purchased, and he had equal, indeed superior, facilities for gaining this information, and if he did not avail himself of them it was his own folly. *Saunders vs. Hatterman,* 2 *Iredel,* 32; *Hemmer vs. Cooper,* 8 *Allen,* 334; *Dillman vs. Nadlehoffer,* 119 *Ill.,* 567, 578; *Manning vs. Albee,* 11 *Allen,* 522.

ROBERTS, J., delivered the opinion of the Court.

This is an action of deceit brought to recover damages for alleged false representations, claimed to have been made by the defendant to the plaintiff in the sale of certain stock of the Loomis Filter Company of Baltimore City. The grounds upon which the plaintiff seeks to recover are, that about the first of September, 1891, the defendant represented to him that he was largely interested in the stock of said company, and familiar with its affairs, which he represented to be in a good and prosperous condition; that all the stockholders had paid par value for their stock, which was one hundred dollars per share, and that plaintiff would be getting his stock at the same price paid by the other stockholders.

The plaintiff purchased from the defendant fifty shares of said stock at its par value, and alleges, that in so doing, he was induced solely and exclusively by the above mentioned representations of the defendant, in whose business capacity and personal integrity he had implicit confidence. The plaintiff further alleges that shortly after said purchase he discovered that he had been deceived by the defendant, who had made the false and fraudulent representations aforesaid for the purpose of deceiving him, and that instead of the stockholders having paid par value for the stock purchased by them, none of them had paid more, and some less, than fifty dollars per share; anl that the particular stock purchased by plaintiff was stock on which defendant had an option of fifty cents on the dollar from said company. This statement constitutes the plaintiff's contention. The defendant denies that he made the alleged representations, or used language calculated to mislead or deceive the plaintiff, and asserts that the plaintiff had ample and better opportunity to ascertain the value and character of said stock than he had, and that the plaintiff did not purchase said stock until after he had been for the

space of nearly two months occupying a position at the New York house of the company, which gave him adequate means of becoming acquainted with the affairs and accounts of the company, its history and its prospects; that he was, by virtue of his position, brought into almost constant personal intercourse with Mr. Manning, its president, from whom, subsequently to the purchase of said stock, he claims to have received information of the price paid by other stockholders for their stock. The plaintiff has one theory and the defendant has another; the plaintiff attempts to show fraud, and the defendant denies it.

The Court below found itself confronted, under the pleadings in the cause, with a state of case well calculated to embarrass its action, but under the practice prevailing in this State it was a condition that could not be avoided. It is quite reasonable that Courts should prefer to have cases presented in such manner as to enable them properly to determine the legal rights of parties with the least possible uncertainty. This however can only be accomplished in cases of the character we are now considering, by consolidating the action of deceit and the action on the contract, thus bringing all the facts and circumstances relating to the controversy before the same Court and jury at the same time. In some jurisdictions this practice is permissible, notably in Massachusetts. Ch. J. SHAW, in *Cook vs. Castner*, 9 *Cush.*, 277, says such a course in practice tends to do justice between the parties. But no such practice prevails in this State. Under the pleadings in this case, we think it makes no difference in so far as the plaintiff's right of action is involved, that the appellant has not complied with the terms of his contract by paying the full amount of the consideration for the stock purchased. If after the discovery of the alleged fraud the plaintiff treated the contract as still in force, and we think there is sufficient proof in the record to have justified the jury in finding that he did so, such ratification could only

have the effect of preventing a subsequent rescission. This Court in *Groff vs. Hansel*, 33 *Md.*, 166, has said, that: "In all cases of fraud the vendee, who alone has the right of disaffirmance, may remain silent, and bring his action to recover damages for the fraud, or may rely on it, by way of defense, to the action of the vendor, although there has been a full acceptance by him, with knowledge of the defects of the property. An affirmance of the contract by the vendee, with such knowledge, merely extinguishes his right to rescind the sale. His other remedies remain unimpaired." The plaintiff had the undoubted right to bring his action in the form he has selected, and it was equally his right to waive his action for deceit, and avail of the alleged false representations as matter of defense in reduction of damages, or in bar of a recovery in the suit upon the promissory notes now pending. This we take to be well established law. *Burnett vs. Smith*, 70 *Mass.*, 50 (4 *Gray*, 50); *Harrington vs. Stratton*, 22 *Pick.*, 510 ; *Groff vs. Hansel, supra; Brantly on Contracts,* 127. The plaintiff by instituting his action for deceit before he had complied with the terms of his contract, has undoubtedly restricted the extent of any recovery which the jury might be authorized to make; but this fact in no manner tends to impair his right to the action of deceit. We are, therefore, of opinion that the Court below was in error in withdrawing the case from the consideration of the jury. The mere fact that it was, under the pleadings and the evidence, difficult to establish a rule of damages which would do substantial justice between the parties, could not be held to disentitle the plaintiff to maintain his action.

Coming now to the consideration of the plaintiff's prayers, we think the Court below properly rejected both of them.

When the testimony in a case of this character is such as to justify the jury in finding that the plaintiff before he purchased the stock in question had the means of

knowledge at hand, or readily accessible to him, by which he could have ascertained the price which the other stockholders had paid for their stock, and failed to make inquiry concerning the same, must be deemed to have availed himself of such means, and be regarded as having notice of the true state of facts. *Bigelow on Torts*, 25. The defendant in his letter of March 26th, 1892, addressed to plaintiff, and which was read in evidence, says: "When question of selling part of my stock to you was proposed, although I was sanguine about it, I absolutely refused to do so until you could thoroughly investigate and satisfy yourself. I placed you in a position to know more about it *practically* than I could possibly know. I secured you in September a position with pay, in our N. Y. office. You were afforded every facility, were left in charge of our exhibit, were our confidential man with regard to our business and its future. After remaining in that situation from September up to the 24th of November, without a word to me during that period, you bought 50 shares of stock at par, and gave Mr. Manning on account for it $2,500. This check I saw, but never for one moment was that money in my possession." The plaintiff in his testimony substantially admits these facts; certainly does not deny them. During his stay in New York he was constantly brought into contact with Mr. Manning, the president of the company, with whom he appears to have been on intimate relations, and from whom he claims to have received, subsequently to the date of his purchase of stock, the information that the other stockholders had not paid more than fifty cents on the dollar for their stock. Neither prayer submits this question to the consideration of the jury. Furthermore, both prayers are well calculated to mislead the jury by suggesting that the plaintiff is entitled to recover such amount as the jury may find that he has lost by the direct consequences of such false representations, "not to exceed, however, the amount paid in cash

for account of said stock, and the value of the North Carolina Railroad bond, and the People's Bank stock transferred to the defendant on account of the same." This too strongly suggests to the jury what their verdict should be, and has an undue tendency in limiting the discretion which they should be permitted to exercise. Nor do we perceive the ground upon which the plaintiff can recover in this action the amount which he has *actually* paid for the stock purchased by him, which is but fifty cents on the dollar, since his contention is that the deceit which the defendant practiced upon him consisted in the representation that the other stockholders had paid for their stock the full par value of one hundred cents on the dollar. Having paid but fifty cents on the dollar, he has lost nothing properly attributable to the alleged deceit. If he had paid the full par value of the stock he might then rely upon the alleged deceit as entitling him to recover for the excess above fifty cents on the dollar. But according to his own showing he has only paid the same price which the other stockholders paid, and he cannot now be permitted to recover, in the language of the prayer, "the amount paid in cash for account of said stock." The true rule of damages properly applicable under the circumstances of this case, is that the plaintiff is entitled to recover such damage as the jury may find he has sustained as the direct consequence of the alleged false representations. *Buschman & Cook vs. Codd*, 52 *Md.*, 209 ; *Robertson vs. Parks*, 76 *Md.*, 123 ; *Addison on Torts, sec.* 1226, *Wood's edition ; Tuckwell vs. Lambert, 5 Cush.,* 23. For these reasons we think both prayers were properly rejected.

No exception has been reserved to the defendant's prayers, because the Court in taking the case from the jury failed to consider them. But as it may serve a useful purpose in avoiding further delay, we will give them present consideration. The defendant has embodied in his first prayer five separate statements of fact, which he claims

must be found by the jury to entitle the plaintiff to recover. We find no error in these several propositions, which we think are fully sustained by the following authorities: *Cooper vs. Schlesinger*, 111 *U. S.*, 148; *Lefler vs. Field*, 52 *N. Y.*, 621; *Abbott's Tr. Prac.*, 618; *McAleer vs. Horsey*, 35 *Md.*, 453; *Addison on Torts*, 827-29.

In the defendant's second prayer there are five paragraphs numbered 2, 3, 4, 5 and 6. We find no error in the second and sixth propositions, but the third, fourth and fifth must be rejected. The third fails to submit to the jury the question of the value of the stock at the time of its purchase by the plaintiff, which should have been done, and for this reason it is defective. The vice of the fourth proposition consists in the fact that there is no evidence in the cause, legally sufficient to sustain it. Nor is it requisite to prove the exact language used in the representation and set out in the *narr.*, but proof of it in substance and legal effect is sufficient. *Craig vs. Ward*, 1 *Abb. Ct. App. Dec.*, 454. The fifth paragraph submits a measure of damages, which does not accord with the views already announced in this opinion.

We have held herein that the plaintiff is entitled to maintain this action, and have recognized the rule of damages, which we think ought to control the action of the jury, if they shall find the defendant guilty of the deceit alleged to have been practiced by him on the plaintiff.

If the plaintiff sustains his theory of the case, he would be entitled to recover in this action the value of the collaterals at the time they were deposited with the defendant.

It follows that the judgment must be reversed.

*Judgment reversed, and*
*new trial awarded.*

(Decided 21st June, 1894.)