## 5902.  PRAY v. PACE.

BROYLES, J.  The answer to the petition alleged facts which, if proved,
would have authorized a verdict for the defendant; and the demurrer,
of course, admits the truth of all facts alleged in the pleading which it
attacks.  The answer was not subject to general demurrer; and, in the
absence of a special demurrer, the court erred in striking the answer
and in directing a verdict for the plaintiff.    *Judgment reversed.*
DECIDED JUNE 3, 1915.

Complaint; from city court of Albany—Judge Clayton Jones.
June 12, 1914.

W. W. Pace sued J. K. Pray on a promissory note of the de-
fendant to the plaintiff, dated January 31, 1911, and due two
years after date, for $2,500 and interest.  The court, on oral mo-
tion of the plaintiff, struck the defendant's answer, and directed
a verdict for the plaintiff.  The answer contained allegations in
substance as follows:  The defendant is not legally bound to pay
the note sued on, for the reason that the consideration of the said
note has wholly failed, and the said note was procured by legal
fraud upon the defendant, as hereinafter set out.  Said note is
one of four notes of even date for $2,500 principal each, due one
on the 31st of each January after date, which were given by the
defendant to the plaintiff for the purchase of 100 shares of stock
of the par value of $100 each in the Albany Cotton Mills, a cor-
poration with its principal office in Dougherty county, Georgia,
said shares having been sold by the plaintiff to the defendant on
the date of the notes and for the amount of the face of the notes,
to wit, $10,000.  At the time of said sale the plaintiff was, and
had been ever since the organization of said corporation, its presi-
dent and one of its larger stockholders, and during said time had,
in connection with J. A. Betjeman, the secretary of the corpora-
tion, practically entire charge of its financial affairs, they having
during that time collected and handled practically all of its funds,
and paid out practically all of said funds that were paid out, and
having incurred practically all of its debts, the corporation having
up to that date not begun the business of manufacturing for which
it was incorporated, but being until then engaged in purchasing,
equipping, building, and installing its mill and plant to be used
in that business.  Up to the time of said sale of stock the cor-
poration had kept no regular set of books, but its financial trans-

actions were, under the direction of the plaintiff, evidenced only by scattered memoranda and vouchers and invoices, and scattered entries on books which were kept according to no regular system of bookkeeping. By reason of these facts the plaintiff was at the time of said sale in a peculiarly advantageous position to know and did know the exact condition of the financial affairs of the corporation better than any one else, and the defendant, who was also a stockholder in the corporation, was not in position to know or ascertain and did not know its financial condition except as reported by the plaintiff. The plaintiff represented to the defendant at the time of the sale that the said corporation had expended in purchasing, equipping, and installing its plant up to that time the amount of its capital stock, $200,000, and the additional sum of $150,000, to meet which a bond issue of $150,000 was authorized, and in addition thereto the sum of $17,204.94, which, according to the representation then made by the plaintiff to the defendant, constituted its entire floating indebtedness. Owing to the foregoing circumstances, the defendant, relying on said representation, agreed with the plaintiff to buy said stock at par, the agreement being induced solely by said representation. Since said purchase of stock it has developed that said statement of indebtedness of the corporation, made to induce the defendant to purchase said stock, was grossly incorrect as follows: that whereas the plaintiff represented said floating indebtedness to be only $17,204.94, the floating indebtedness above said $150,000 bond issue amounted to $62,000 at the time of said sale of stock. And by reason of this enormous floating indebtedness, concealed by the plaintiff as aforesaid, it turned out that the corporation was unable to secure funds with which to operate on any terms advantageous to it. If said representations had been true and the floating indebtedness had been only $17,204.94 as stated, the corporation "could have secured funds on which to operate and could have operated successfully, then its stock could have been worth par." But by reason of the floating indebtedness in excess of that stated by the plaintiff, the corporation being unable to procure funds on which to operate as aforesaid, this stock was, when the true facts appeared, wholly worthless, and this was its condition at the time of said sale; and this was unknown to the defendant, but was known to the plaintiff. By amendment the defendant further answered as follows: At

the time of said sale of stock on January 31, 1911, the plaintiff sold to the defendant 200 shares of said stock, and in connection therewith made a written agreement, a copy of which is attached as an exhibit hereto, which agreement was cancelled on April 27, 1911, when the plaintiff released A. P. Vason and Edwin Sterne on their notes referred to therein, and took back 100 shares of the stock, and four notes were given by the defendant to the plaintiff, dated January 31, 1911, one of which is the note sued on in this case. The defendant has been a director in said corporation since its organization, and on October 6, 1910, he was elected vice-president and chairman of the executive committee of the board of directors. On February 1, 1911, he was elected president of the corporation, instead of the plaintiff, and served in that capacity until January 11, 1913, when F. F. Putney was elected president, and he is still serving in that capacity. Said notes given on April 27, 1911, were given in lieu of the original notes given for the purchase-price of said stock on January 31, 1911, and before maturity of any of them, but the defendant had no more knowledge, and could not by the exercise of ordinary diligence have had more knowledge, of the financial condition of said corporation and its debts at the time of the giving of said note sued on than at the time of the giving of the original notes. At all the times hereinbefore referred to, the defendant did not know the financial condition or the debts of said corporation, and could not by the exercise of ordinary diligence have known either, except as reported by the plaintiff, and the plaintiff did know said financial condition. By the terms of the agreement attached to the amended answer, Pace sells 200 shares of stock, and Pray agrees to execute four notes for $5,000 each for the purchase-price, due respectively three, four, five, and six years after date. Pace agrees to accept notes of A. P. Vason and Edwin Sterne for $5,000 each, indorsed by Pray, in lieu of two of the notes; and Pace agrees to indorse notes of the corporation with Pray, Vason, and Sterne, for $50,000, and to join Pray in indorsing the corporation's notes during 1911 to the amount of $50,000; and it is recited that this contract is made with the understanding that Pace is to retire as president of the Albany Cotton Mills and that Pray is to be elected president. Below the signatures to the contract is an entry dated April 27, 1911, and signed by Pray, as follows: "This is to certify that the

above contract has been cancelled by my giving W. W. Pace new notes of $2,500 each, without any conditions, amounting to $10,-000.00, and his relieving my indorsement on A. P. Vason and Edwin Sterne notes, amounting to $10,000.00."

*Pope & Bennet,* for plaintiff in error, cited: 3 *Ga. App.* 665 (2), 671 (bottom), and cit.; 1 *Ga. App.* 5; 9 *Ga. App.* 758 (mid.) ; 7 *Ga. App.* 299 (2d) ; 72 *Ga.* 66 (2) ; Civil Code, § 4305; 38 *Ga.* 216 (2) ; 10 *Ga. App.* 669 (3) ; 134 *Ga.* 325, 328, 329; 20 Cyc. 91; 1 Bigelow, Fraud, 66; 2 *Ga. App.* 57 (1) ; 135 *Ga.* 590 (2d case) ; 94 *Ga.* 183 (1) ; 114 *Ga.* 360 (1) ; 119 *Ga.* 876 (7) ; 4 Thomp. Corp. 4165, notes 6 and 7; 78 S. W. 158, 25 Ky. L. 1489; 69 N. J. L. 612, 55 Atl. 814; 4 Thomp. Corp. 4146, notes 9 and 13; 116 Ala. 278 (22 So. 514); 162 Ill. 417 (44 N. E. 748); 68 Iowa, 241 (26 N. W. 131) ; 66 S. W. 512; 112 S. W. 1115; 79 Md. 530 (30 Atl. 189); 118 N. W. 615; 49 Minn. 322 (51 N. W. 1056); 50 Neb. 779 (70 N. W. 366) ; 98 Pac. 1047; 35 Cyc. 72 (top), and cit.; 140 *Ga.* 594; 118 *Ga.* 362; Civil Code, §§ 4250, 5675, 4254, 4112; 132 *Ga.* 41, 43 (bottom) ; 3 Cook, Corp. (6th ed.) § 716; 122 *Ga.* 20; 7 *Ga.* 191; 10 Cyc. 830 (note 68) ; 12 *Ga. App.* 496 (2) ; 134 *Ga.* 288, and cit.

*Pottle & Hofmayer,* contra, cited: 100 *Ga.* 628; 137 *Ga.* 59; 115 *Ga.* 156; 136 *Ga.* 739; 142 *Ga.* 49 (1) ; 13 *Ga. App.* 775; 13 *Ga. App.* 25; 79 Md. 530; 34 Mont. 169; 48 Wash. 348; 130 U. S. 643; 142 U. S. 43; 9 *Ga. App.* 43; 129 *Ga.* 37 (9) ; 124 *Ga.* 328; 108 *Ga.* 12; 138 *Ga.* 247, and cit.; 8 *Ga. App.* 540 (1) ; 13 *Ga. App.* 277 (4), 280.