# James M. Melville *vs.* James. A. Gary.

*Action of Deceit—Representations—Evidence.*

In an action of deceit it appeared that the plaintiff, the owner of a woolen mill, mortgaged it, together with its machinery, to the defendant to secure a loan, payable in half yearly instalments, with power of sale upon default by the mortgagor. The plaintiff, with his two brothers, began the manufacture of woolen goods, but had not been in business more than a year when they became embarrassed, and applied to their creditors for an extension of time. The defendant, a friend of the plaintiff's father, and entertaining friendly feelings towards the plaintiff, assured him of his willingness to help him out of his difficulties—to do anything reasonable to assist him. He advised that the mill be sold under the mortgage, and promised to buy it in at such a price as the plaintiff could afford to hold it, provided the plaintiff could obtain releases from his creditors, and should he fail in this, then the property should be put in the name of one of his family. The defendant had some undefined intention of going into business with the plaintiff, provided he could make a satisfactory adjustment with his creditors. When the plaintiff became embarrassed, and was unable to pay the instalments due on the mortgage, the defendant agreed without any consideration to give him an extension, although he had the power to sell the property on default in the payment of the mortgage debt. The plaintiff was unable to obtain releases from his creditors, and the property was sold to a third party for less than it had cost the plaintiff. The plaintiff was not present at the sale, although within a few miles of where it took place. The sale was fairly conducted, and the defendant made every effort to have it sell for its full market value. No objection was filed by the plaintiff to the ratification of the sale. HELD :

That the evidence was legally insufficient to justify a finding by the jury of fraud on the part of the defendant, and of damage to the plaintiff, both of which were necessary to a recovery.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, FOWLER, and BRISCOE, J.

*Thomas Mackenzie,* and *John V. L. Findlay,* for the appellant.

*Henry Stockbridge,* and *J. Morrison Harris,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

This is an action of *deceit,* founded on certain false and fraudulent promises and representations alleged to have been made by the defendant, upon the faith of which the plaintiff acted, and in consequence of which he suffered damage.

After the plaintiff had closed his case, the Court instructed the jury that the evidence was legally insufficient to entitle him to recover, and their verdict must be for the defendant.

The case on appeal has been fully, and, we may add, ably argued on both sides, and, after the fullest consideration, the Court was right, we *think, in directing* a verdict for the defendant.

"The foundation of an action of this kind, says BULLER, J., in the leading case of *Pasley vs. Freeman,* 3 *Term Rep.,* 57, is fraud and deceit in the defendant, and damage to the plaintiff. Fraud without damage, or damage without fraud, gives no cause of action; but where these two concur an action lies."

So, to entitle the plaintiff to recover, he was bound to offer evidence from which the jury could reasonably find that the promises and representations set out in the declaration, were false and fraudulently made; and then, in the next place, that the plaintiff, relying on these representations, had suffered injury. Now what is the evidence? In the latter part of 1888, the plaintiff

Melville *vs.* Gary.

bought at public sale a woolen mill, for the sum of six thousand dollars. He afterwards expended about four thousand dollars in improvements and putting it in proper running condition. He then mortgaged the mill and its machinery to the defendant to secure a loan of eight thousand dollars payable in half yearly instalments, with power of sale upon default by the mortgagor. Then in company with his two brothers, under the firm of Melville Brothers, they began the manufacture of woolen goods but they had not been in business more than a year, when finding themselves embarrassed they were obliged to apply to their creditors for an extension of time. And the plaintiff being unable to pay the instalment due on the mortgage, was obliged also to apply to the defendant for an extension, representing to him at the same time, that *his business prospects were first class, if he could only keep his head above water for a short time,* and this extension the defendant granted. On the 30th of January, just fourteen days after his application to the defendant for an extension, the plaintiff being still embarrassed, consulted counsel in regard to an assignment for the benefit of creditors, and the assignment was in fact prepared but not executed, because the plaintiff wanted to consult with the defendant, and because one of the brothers refused to join in its execution. Upon learning that the plaintiff had in contemplation an assignment of his property for the benefit of creditors, the defendant on the 1st of January, wrote to him as follows:

"I am informed to-day, you have applied for a receiver to close up your business. I cannot think this is possible after what you said to me on the 17th ulto. Altho' I thought possible some of your creditors might have taken action against you. Kindly advise me fully in the matter by return mail. If you have seriously thought of placing your matters in the hands of a re-

ceiver, think your interests will be promoted by first talking the matter over with me. You have reason to know I feel friendly towards you. and will do anything reasonable to aid you. What advice I may be able to give you will be in your interest. In my judgment, you will make the great mistake of your life if you give up business after so short a struggle."

Before the receipt of this letter, the plaintiff had started for Baltimore for the purpose of consulting the defendant, but was obliged to return on account of a rain storm. A few days afterwards, February the 4th, he went to Baltimore and saw the defendant. In that interview the latter said: "You and I have large interests in the 'Oakland' property, and I want you to tell me candidly if you can make money out of it, if properly backed. I don't want to go into this thing without knowing all about it." He spoke of the friendly relations between plaintiff's father and himself, and expressed a willingness to help the plaintiff out of his difficulties. He inquired all about the plaintiff's indebtedness, and the relations of his brothers to the firm, and whether they would step aside to enable him to become interested in the business. The next day, in company with the plaintiff, he went to the mill, and on their way, the manner in which he was to assist the plaintiff was fully discussed. He advised that the mill should be advertised at once for sale under his mortgage, and suggested that the plaintiff should write to him requesting the defendant to sell it under the mortgage; said he would buy it in at such a price as the plaintiff could afford to hold it; that he would give him twenty years, if necessary, to pay for it, and if the plaintiff could get releases from his creditors, "*they could go ahead.*" And if he could not, he would put the property in the name of one of the plaintiff's family. He advised that the entire assets of Melville Brothers

should be assigned for the benefit of their creditors, and then with a promise of assistance on his part, he did not think there would be any difficulty in getting releases from them. The mill he thought was worth thirty thousand dollars, and every nerve ought to be strained to keep it. At the suggestion of the defendant, the plaintiff on February 8th wrote to him the following letter:

"Inasmuch as our business here has not been successful, and I am not in possession of the funds necessary to pay note of $500 due on acct. of your mortgage and also the interest note of $225, I respectfully suggest that you take steps towards foreclosing the mortgage. It is with feelings of deep regret I am compelled to abandon the property, and that in so doing I force you to accept it in lieu of the money you so kindly loaned on it; but being placed in a position where I have no choice in the matter, I think it better that you should foreclose, and manage the disposition of the property covered by your lien, rather than have it sold by the partnership creditors. Sincerely hoping you will find a purchaser at a price that will not subject you to loss, and grateful for the interest you have manifested in and the aid extended to me,

"I am yours, truly,

"J. M. Melville."

The defendant on the receipt of this letter advertised the mill for sale under his mortgage, the sale to take place at Westminster, on the 8th March. In the meantime the plaintiff, acting upon the advice of the defendant, made every effort to obtain releases from his creditors, but he found difficulties in the way, some of them refusing to join in the release unless the defendant was a party in some way to the settlement, and this he refused to do. While these negotiations were going on, the defendant on March 1st wrote to the plaintiff as

follows: "Yours of the 28th inst. before me. Of course an arrangement with your creditors would enable you to make business arrangements with myself or others, which could not be done while matters stand at present, and is therefore desirable, but it occurs to me that your creditors shall release you unconditionally, and give you a fair chance to get on to your feet again."

After the receipt of this letter the plaintiff again saw the defendant, and the latter assured him of his willingness to assist him, and authorized him so to say to his creditors, but at the same time, he refused to become a party to the settlement with them. He then said to the plaintiff, "suppose the property can be sold for $15,000, would it not be better to sell?" and the plaintiff replied, "Yes," and he added "or even $10,000 or $8,000," to which no reply was made. On the next day, the plaintiff again went to Philadelphia to see what terms could be made with his creditors, and on the evening of the same day he returned home without being able to get them to execute releases; some were willing, and others hesitated or refused. The day after his return the mill property was sold under the mortgage for $7,900, J. N. Steele, being the purchaser. The plaintiff, although within a few miles of Westminster, where the property was sold, was not present at the sale, nor did he send to the defendant any explanation as to the cause of his absence. Steele, the purchaser, says there was no arrangement whatever between the defendant and himself in regard to the sale of the property; that he met the defendant on the train the morning of the sale, and he expressed surprise and disappointment in not finding the plaintiff on the train; they had some talk about the sale of the property, and the defendant said if he, the witness, was prepared to give a good price for the mill, and would make a substantial cash payment, he would be glad to sell it, and would give witness twenty years if necessary

Melville *vs.* Gary.

to pay for it. The assets of the firm of Melville Brothers amounted to $2,000, and their liabilities to $6,000. The mill was assessed at $11,000 before the sale, and after the sale at $8,000.

Now, this is the plaintiff's evidence and what does it prove? It proves, it is true, promises and assurances by the defendant to help the plaintiff out of his difficulties; it proves too, that he advised the mill should be sold under his mortgage, and promised to buy it in at such a price as the plaintiff could afford to hold it, provided he could obtain releases from his creditors; and should he fail in this, then the property was to be put in the name of one of his family. It proves too, that the defendant had some undefined intention of going into business with the plaintiff, provided he could make a satisfactory adjustment with his creditors. But then the question is, were these promises and representations made without any intention of fulfilling them, and for the purpose of misleading and deceiving the plaintiff? And here is the weak point of the plaintiff's case. In considering this question, the inquiry necessarily suggests itself, what possible motive could he have in deceiving and defrauding the plaintiff? He had been the friend of the plaintiff's father, and had shown every disposition to help the son. When the latter bought the mill he loaned him eight thousand dollars to enable him to pay the purchase money, and to begin business, and the loan was made on the most easy and favorable terms. When the plaintiff became embarrassed, and was unable to pay the instalments due on the mortgage, he agreed without any consideration to give him an extension, although he had the power to sell the property on default in the payment of the mortgage debt. And in the letter of February 8th, the plaintiff acknowledges his grateful obligations for the many acts of kindness extended to him by the defendant. And the only motive suggested

in argument for making these alleged false and fraudulent promises was to induce the plaintiff to write the letter of February 8th, requesting the defendant to advertise the property for sale under his mortgage. But why should he resort to fraud and deception to accomplish such a purchase? The plaintiff had already made default in the payment of the mortgage debt, and under the power of sale, the defendant had the right to sell the property at any time without the plaintiff's consent. He had agreed, it is true, to give him an extension of sixty days, but this agreement was made without consideration, and upon the representation by the defendant that his business prospects were first-class, when in point of fact, he was on the eve of making an assignment for the benefit of his creditors. And if we are to believe that he is guilty of all this fraud and deception, why should the defendant regard a promise made without consideration, and not binding upon him? Does not the evidence show that these promises, instead of being false and fraudulent, were made upon the express condition that the plaintiff should obtain absolute releases from his creditors. To the plaintiff's witness, Babylon, the defendant said he was willing to help the plaintiff if he could *"get an absolute release from his present indebtedness."* And in his letter to the plaintiff of March 1st he says: "An arrangement with your creditors would enable you to make business arrangements with myself and others which could not be done while matters stand as at present." And in all his conversations with the plaintiff, promises of aid to help him, are based upon getting releases from his creditors. So it does not seem to us there was any evidence from which the jury could reasonably find that these promises were falsely and fraudulently made. But fraud alone, even conceding there is evidence of such fraud, is not sufficient to support the action. There must be fraud on the part of

the defendant, and damage to the plaintiff. But the damage to the plaintiff, it was argued, resulted from the depreciated sale of the property. He had bought the mill at public sale for $6000, and had expended about four thousand dollars in improvements, and after operating it unsuccessfully for a year, it sold for $7900. The sale was fairly conducted, and the defendant made every effort, it appears, to make it sell for its full market value. To Steele, the purchaser, he says: "If you are prepared to give a good price for it, and will make a substantial payment, you can have twenty years" to pay the balance of the purchase money. And though a good deal has been said about the ruinous sacrifice of the property, no objection was ever filed by the plaintiff to the ratification of the sale. But it is unnecessary, it seems to us, to pursue the matter further. Take the evidence as a whole, it is legally insufficient, we think, to justify a jury in finding fraud on the part of the defendant, and damage to the plaintiff.

*Judgment affirmed.*

(Decided 8th June, 1892.)