## WINFIELD S. CAHILL *vs.* CHARLES L. APPLE-GARTH.

*Fraud—False Statement as to Fact Ascertainable Upon Inquiry—Action of Deceit—Instructions to the Jury—Evidence.*

The circumstance that a person who made an untrue statement could by the exercise of ordinary care have ascertained that the statement was false does not constitute in itself such fraud as will support an action of deceit.

If a person, for the purpose of deceiving another, makes a representation as to a material fact which he does not believe to be true, or if he falsely asserts that he has knowledge of such fact when he must know that he does not possess the knowledge, or if he makes the statement in reckless disregard of whether it be true or not, and the person to

whom such representation is made is thereby induced to act to his prejudice, the person making the representation commits a fraud which will sustain an action for deceit.

A false statement as to the ownership of property sold by the defendant to the plaintiff is not necessarily fraudulent in law, since it may not have induced the plaintiff to make the purchase.

Plaintiff in an action of deceit alleged that he had been induced to buy shares of stock in a bank of which the defendant was the president by means of certain false statements by the defendant as to the condition of the bank and the value of the shares. *Held*, that an instruction to the jury is erroneous which directs them to find for the plaintiff if the representations "were either known to the defendant to be false or by the exercise of ordinary care (that is, such care as might reasonably be expected of an ordinarily prudent and intelligent bank president under the circumstances) ought in your judgment to have been known by him to be false."

Defendant, president of a bank, made to plaintiff certain statements concerning the financial condition of the bank and the value of its shares of stock which caused plaintiff to buy certain shares. In an action of deceit alleging that the defendant made the statements with knowledge of their falsity or recklessly for the purpose of deceiving the plaintiff. *Held*, that evidence is admissible to show that no dividends had been paid on the shares for four or five years.

*Held*, further, that evidence of the fraudulent conduct of the defendant in a similar transaction with other parties about the same time is admissible.

It is not necessary in an action of deceit to prove that the defendant used the exact language set out in the declaration, but proof that words to the same legal effect were used is sufficient.

Appeal from the Superior Court of Baltimore City, (PHELPS, J.)

*Defendant's 1st Prayer.*—In order to entitle the plaintiff to recover in this case, the jury must find from the evidence that the defendant, with a view to induce the plaintiff to purchase stock of the South Baltimore Bank, made representations set forth in the declaration in this case, which representations were false in fact when made, and the defendant had no reasonable ground to believe the same to be substantially correct when made; and also that the same were made with the fraudulent intent to cheat and deceive the plaintiff and that the plaintiff had not at hand the means of verifying the truth of such rep-

resentations, and that in purchasing said stock the plaintiff relied on such representations, and would not have made such purchase except upon the faith of the same, and that in consequence thereof he was misled and injured.    (*Refused.*)

*Defendant's 2nd Prayer.*—Even if the jury find that the representations alleged in the declaration, or any of them, were made by the defendant, and that such representations were untrue in fact, yet their verdict must be for the defendant, unless they further find that the defendant fraudulently intended to deceive the plaintiff; and in making up their minds upon the question of fraud, the jury are instructed that fraud is not to be presumed, and that the burden of proof is upon the plaintiff to overcome such legal presumption by evidence satisfactory to the jury.    (*Refused.*)

*Defendant's 3rd Prayer.*—The plaintiff is not entitled to recover on account of any representations they may find the defendant to have made to the plaintiff that the South Baltimore Bank was doing nicely, or had a prosperous business, or was a good investment, and the jury must exclude such representations from their consideration as constituting of themselves a basis of recovery in this action, and under the issue joined on the pleadings herein.    (*Refused.*)

*Defendant's 6th Prayer.*—The uncontradicted evidence showing that Mr. Campen one of the directors, tried to buy stock of the South Baltimore Bank at twenty dollars per share, in the presence of the plaintiff, after he bought the stock from the James Clark Company, and that sales of the South Baltimore Bank were made to other directors with the knowledge of the plaintiff at twenty dollars per share, after he had bought the stock from the James Clark Company, in no event can a verdict be given for a greater sum than three dollars and fifty cents per share with interest thereon in the discretion of the jury.    (*Refused.*)

*Defendant's 8 1-2 Prayer.*—Even if the jury should find a verdict for the plaintiff, it can be for no greater or larger amount than would have been the loss of the plaintiff, if he had made every endeavor to reduce his loss, which he could

have made by the excercise of reasonable efforts, after he learned, or by the exercise of reasonable diligence could have learned that a deceit had been practiced upon him by the defendant, with interest on the amount of such loss from the time it would have been made, in the discretion of the jury. (*Granted.*)

*The Trial Court's Instruction.*—If you find affirmatively, and by a preponderance of proof, that at and before the sale by the defendant to the plaintiff of the 30 shares of stock in the South Baltimore Bank, the defendant being a director and president of the bank, and a member of its finance and book committees, as an inducement to the plaintiff to buy said stock, made representations to the plaintiff concerning the then existing actual financial condition and soundness of said bank, and consequent value of its stock, or as to the real. ownership of said 30 shares, substantially as charged in the declaration, which representations, in whole or in material part, were false in fact, and were either known to the defendant to be false, or by the exercise of ordinary care (that is, such care as might reasonably be expected of an ordinarily prudent and intelligent bank president under the circumstances), ought in your judgment to have been known by him to be false; and if you further find, as aforesaid, that the defendant at the time of making such false representations (if you find the same), either willfully intended to deceive the plaintiff, or was recklessly indifferent as to whether the plaintiff would be deceived or not; and if you further find, as aforesaid, that in buying said stock the plaintiff was induced to rely upon the supposed truth of such misrepresentations, in whole or in any material part, to such extent that, but for the same, the deal, in your judgment, would not have been made; and if you further find, as aforesaid, that the plaintiff had not, and could not, in the exercise of ordinary care on his part (that is, such care as might reasonably be expected of an ordinary prudent and intelligent buyer of stock under the circumstances), have had the means at hand to verify the truth of said representations; and if you further find, as aforesaid, that, as a direct consequence of the

premises, the plaintiff has sustained loss; then the plaintiff is entitled to recover such amount as will compensate him for such loss, with interest from the time thereof, not exceeding 6 per cent, in your discretion.

You are also instructed that fraud is never to be presumed, but must be clearly proved, and if you fail to find all the propositions set forth substantianially as stated, or if, after due consideration, your minds are still in a state of equipoise or balance as to any one or more of them then the defendant is entitled to your verdict.

By the word "material" as used above you are to understand such representations of the character mentioned as you may find were intended by the defendant to influence and did influence the plaintiff to such an extent that, but for the same, the deal in your judgment would not have been made.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Robert H. Smith* and *Wm. S. Bryan, Jr.*, for the appellant.

*Wm. A. Wheatley*, for the appellee.

BOYD, J., delivered the opinion of the Court.

This is an action for *deceit* brought by the appellee against the appellant to recover damages sustained by the former by reason of the purchase of thirty shares of stock of the South Baltimore Bank from the appellant in October, 1897. The alleged false representations and statements relied on in the declaration are that the appellant, who was a stockholder, director and president of the bank, said it was in a prosperous condition and making money; that none of the stock was then on the market, but the defendant was anxious to have the plaintiff connected with the bank as a stockholder and director, and if he heard of any of the stock for sale he would advise the plaintiff; that on the first of October, 1897, the defendant informed him that he had heard of a small block of stock for

sale and had purchased it for him at $23.50 per share, and was afraid to take time to consult with the plaintiff for fear some other person might buy it, as it was then worth on the market $25.00 per share, but the party having it for sale wanted to raise some money quick, and was not posted. It is further alleged that plaintiff said that he did not have time to examine the stock market, or the condition of the Bank, "and he guessed he would not take the stock," and the defendant thereupon reminded him that he, the defendant, was president of the bank and, as such, familiar with its affairs, and repeated what is alleged above as to the value of the stock, and said the defendant himself would have taken it if it were not for the fact that he wanted plaintiff's name connected with the bank; that he then said to the defendant that as he had been connected with the bank a long time and, as its president, ought to know what he was talking about, he would on his statement and representation as to the condition of the bank and the market value of its stock, take the thirty shares, which he did and paid him $705.00 for them.

The falsity of the representations is thus alleged. "That the said statements and representations made by the defendant to the plaintiff were false and known to the defendant at the time to be false, or were made by him with a reckless disregard of their truth or untruth, and were made for the purpose of deceiving the plaintiff."

The trial of the case resulted in a verdict for the plaintiff for the full amount paid for the stock and interest. During the trial eleven exceptions were taken—ten of them being to rulings of the Court in admitting or rejecting evidence offered and the other embracing the prayers, seven of which were offered by the plaintiff and thirteen by the defendant. The Court rejected all of the prayers, excepting those of the defendant numbered 4 and 8½, and gave an instruction of its own to which the defendant excepted specially as well as generally. As that instruction of the Court presents the most important question in the case, we will first consider it.

1. Several objections are urged by the appellant to it, but

that which we deem to be of most importance is the portion of it referring to the alleged untruth of the representations. After submitting to the jury to find whether at or before the sale the defendant, being a director and president of the bank and a member of its finance and book committees, as an inducement to the plaintiff to buy said stock, made representations to him concerning the financial condition of the bank, etc., or as to the real ownership of the thirty shares, which representations in whole or material part were false in fact, it then proceeds as follows: "And were either known to the defendant to be false, *or by the exercise of ordinary care* (that is, such care as might reasonably be expected of an ordinarily prudent and intelligent bank president under the circumstances) *ought in your judgment to have been known by him to be false.*

*McAleer* v. *Horsey,* 35 Md. 439, is the leading case in this State in actions for deceit, and there have been a number of them before this Court since that decision was made. In that case the subject as presented by the facts therein considered was very thoroughly discussed. Amongst other things it was stated that "The cases in the English Courts on this subject are carefully reviewed in *Benjamin on Sales,* 338 to 345, where it is stated that the settled law of England now is, that to support an action for false representation, the representation must not only have been false in fact, but also have been made *fraudulently.*" That case proceeded wholly on the theory that the representations were false, were made with intent to induce the plaintiff to purchase, the defendant *"knowing them at the time to be false,"* and that the plaintiff was thereby induced to purchase. In *Buschman & Cook* v. *Codd,* 52 Md. 202, the false representations were concerning matters pertaining to the business of the defendants, the falsity of which was clearly within their knowledge and the principles announced in *Mc-Aleer* v. *Horsey* were followed. In *Robertson* v. *Parks,* 76 Md. 118, the plaintiff sued the defendants, who were stockholders and officers managing the affairs of a corporation, for misrepresentations made by them concerning the condition of the

company which induced the plaintiff to invest five thousand dollars in its stock. That case went further than the two above cited, and it was held that: "It is not necessary in all cases to show that the defendant *knew* at the time that the representation made by him was false in fact. It is sufficient if the statement be made for a fraudulent purpose, and without a *bona fide* belief in its truth by the defendant, with the intention of inducing the plaintiff to do an act, and that act is done, in reliance upon the truth of the representation, which turns out to be false to the damage of the plaintiff. In such case an action for damages sustained may be maintained." The case of *Taylor* v. *Ashton*, 11 Mees. and W. 401, was cited with approval. That was an action against the directors of a bank for false and fraudulent representations alleged to have been made by them concerning its condition : JUDGE ALVEY said of it : "It was held, that if a party makes an *untrue* representation to another for a *fraudulent purpose*, with the intent to induce the latter to do an act which he afterwards does, to his prejudice, an action for deceit will lie ; and that it is not necessary to show that the defendant *knew* the representation to be untrue in point of fact. It is only necessary to show that the defendant pretended to a knowledge which he must, according to principles of reason and good faith, have known that he did not possess at the time of the misrepresentation made." In *Melville* v. *Gary*, 76 Md. 221, this Court quoted with approval what was said by BULLER, J., in *Pasley* v. *Freeman*, 3 Term Rep. 57, that "The foundation of an action of this kind is fraud and deceit in the defendant, and damage to the plaintiff. *Fraud without damage*, or *damage without fraud*, gives no cause of action ; but when these two concur an action lies." In *Weaver* v. *Shriver*, 79 Md. 530, we said that a prayer of the defendant which thus referred to the question of knowledge was correct: "That the defendant, at the time of making the representations knew them, or any of them, to be untrue, or made them or either of them with a reckless disregard of their truth or untruth." In *Phelps* v. *G. C. & C. R. R. Co.*, 60 Md. 536, where it was claimed that certain es- .

timates given to the plaintiff by the defendant's officers, on which he relied in making a contract to build a railroad, were false, a prayer was approved which required the plaintiff to satisfy the jury that the engineer did not make the representations in good faith "but that they were false to his knowledge, *or that he had no reasonable ground to believe them to be true at the time,*" and that was in substance stated in an instruction given by the lower Court, which was also approved of by this Court.

We have thus referred to some of the principal actions for deceit that have been in this Court. Some of them present facts which are quite analogous to those now before us, but none of them go so far as this instruction of the Court, which left to the jury to find either that the representations were known by the defendant to be false, or by the exercise of ordinary care ought in the judgment of the jury to have been known by him to be false. In other words, the jury was not only not required to find that the defendant did know that they were false, but the only substitute for that knowledge (which must generally be shown in actions for deceit) required by the instruction was the *negligence* of the defendant in not knowing his representations to be false, for that is what it amounts to. In *Robertson* v. *Parks*, it was said to be sufficient "if the statement be made for a fraudulent purpose, and without a *bona fide* belief in its truth by the defendant," and in *Weaver* v. *Shriver*, the alternative stated by this Court was that the defendant made the representations "with a reckless disregard of their truth or untruth," and in *Phelps* v. *Railroad Company*, "that he had no reasonable ground to believe them to be true at the time." But in such cases when the plaintiffs have been permitted to recover, without proving actual *knowledge* on the part of the defendants, there have been conditions which at least showed a moral delinquency and not merely a lack of knowledge, by reason of the fact that the defendant had not exercised ordinary care in connection with his duties, to inform himself of the real facts. There are many cases elsewhere to the effect that such an alternative as

was given in this instruction connot be allowed in an action for deceit. In *Kountze* v. *Kennedy*, 117 N. Y. 124, it was said "The gravamen of the action is actual fraud, and nothing less will sustain it. The representation upon which it is based must be shown not only to have been false and material, but that the defendant when he made it knew that it was false, or not knowing whether it was true or false and not caring what the facts might be, made it recklessly, paying no heed to the injury which might ensue. Misjudgment, however gross, or *want of caution*, however marked, *is not fraud*. Intentional fraud, as distinguished from a mere breach of duty or *the omission to use due care*, is an essential factor in an action for deceit." In *Nash* v. *Minnesota Title Co.*, 163 Mass. 574, the Court after quoting from *Derry* v. *Peck*, 14 App. Cas. 337, said, "it is made clear that by the. law of England mere ignorance or *negligence* or stupidity on the part of the person making the representations does not constitute fraud, if he intends honestly to tell the truth, although his statements understood according to their seeming meaning may be ever so misleading." See also as reflecting on this question, although we do not adopt all that is said in cases cited, *Boddy* v. *Henry*, 113 Iowa, 462 (s. c. 53 L. R. A. 769); *Crowell* v. *Jackson*, 53 N. J. L. 656; *Upton* v. *Vail*, 6 Johns. 183; *Trimble* v. *Reid*, 97 Ky. 713.

The general rule undoubtedly is that in actions for deceit there must be knowledge of the falsity, by the party making the representation, and hence scienter must be expressly alleged and proven, or there must be such allegations and proof as import knowledge. There are apparent exceptions to that rule, but they are for the most part more apparent than real. If the party does not *bona fide* believe in the truth of the statement made by him, or if he pretends to have knowledge of what he speaks, which he must have known that he did not have, or was utterly indifferent and reckless as to whether it was true, or had no reasonable ground to believe it was, or falsely asserts a material fact to be true of his own knowledge, and such representation be made for a fraudulent purpose, and

he thereby induces another to act to his prejudice, he commits a fraud which will sustain an action for deceit. But this instruction goes much further and holds the defendant responsible for a failure to know what in the judgment of the jury he ought to have known if he had exercised ordinary care, which is defined to be such as might reasonably be expected of an ordinarily prudent and intelligent bank president under the circumstances. In short, if a bank president actually believes that the bank is prosperous and solvent, and that his stock is worth par, and he so represents to another and thereby induces him to purchase it, his conduct is to be branded as fraudulent, because he has been negligent, and is to be held liable in an action for deceit which can only be sustained when there is *fraud*, on the theory, not that he *must*, but *ought* to and *could* have known that what he said was false. If that can be done, then if a cashier embezzle funds of a bank, and conceals his defalcations from the president and the latter in ignorance of the act of the cashier represents his stock to be worth par, and induces another to purchase some part of it, this form of action could be sustained against the president, if the jury thought he ought to have known of the defalcation by the exercise of ordinary care. A bank officer may be, and generally is, liable for his want of reasonable care, or in other words for his negligence, but it does not follow that he has been guilty of fraud, or that he can be sued in a form of action that depends upon fraud for its foundation. Of course when a bank officer makes such representations about his stock as are alleged to have been made in this case, it is relevant to prove his relation to the bank and his opportunities to know the real facts, as tending to show that he did have such knowledge as the law holds him responsible for, but that is altogether different from the theory of this instruction. What we have said is in view of the fact that this is *an action for deceit*. If it were a bill in equity to rescind the contract, different principles might be applied. In equity "the *gist* of the inquiry is, not whether the party making the statement *knew* it to be false, but whether the statement made as

true was believed to be true, and therefore, if false, deceived the party to whom it was made." *Joice* v. *Taylor*, 6 G. & J. 58. In *Trimble* v. *Reid, supra*, the Court said: "In such a case the Court will, on these facts, rescind the contract with-out any fraudulent intent being shown, without any knowledge actual or constructive on the part of the vendor that the state-ments were in fact false." In *Kountze* v. *Kennedy, supra*, it was said "The law affords remedies for the consequences of innocent misrepresentation. A contract induced thereby may, in many cases, be avoided, and the equitable powers of Courts are frequently interposed for the rescission of contracts or transactions based upon mistake, or innocent misrepresenta-tions.". See also *Hicks* v. *Stevens*, 121 Ill. 186; *Boddy* v. *Henry, supra*.

There are cases in which it has been held that officers and directors of corporations are bound to know the truth of the facts which they assert, and they cannot escape on the ground that they did not know their representations were false. But in those cases they were representing their corporations in transactions connected with them. *Hubbard* v. *Weare*, 79 Iowa, 678; *Giddings* v. *Baker*, 80 Texas, 308; *United Soc.* v. *Underwood*, 9 Bush. (Ky.) 609. In *James Clark Co.* v. *Col-ton*, 91 Md. 204, we said in reference to the officers of this bank "As president and director of such a financial institution the law imputes the requisite knowledge and neither he nor they can be given, on account of their willful ignorance a better standing than they would have had if they had per-formed their duties." We there held that such officers would not be permitted, when the bank was in fact insolvent, to pay their own claims in preference to other creditors, but it is ap-parent that the application of such principles to the facts of that case is altogether different from applying it in an action for deceit, especially to a president in his individual dealings, concerning his own stock and not the property of the bank.

This instruction is also objected to by the appellant for sev-eral reasons mentioned in his special exceptions, but we do not think they can be sustained. It is objectionable, how-

ever, on account of the fact that it authorized a recovery if
the jury found that the defendant had made false representa-
tions concerning the financial condition of the bank, etc., "*or*
as to the real ownership of said thirty shares, substantially as
charged in the declaration." That might, to say the least, be
misleading, for it cannot be said that a false representation
merely as to the real ownership of the stock would justify a
recovery, if there was none as to the financial condition of the
bank. It is difficult to see how that alone would be material.
The declaration alleges, as inducements for the plaintiff to
purchase, the misrepresentations that none of the stock was
on the market, that it was worth $25 per share, that the bank
was prosperous and making money, that the opportunity to
buy was exceptional, etc., but it does not allege that the mere
representation as to ownership induced him to purchase.

We are therefore of the opinion that that instruction was
erroneous for the reasons we have given, and we will only
briefly refer to the prayers of the defendant that were re-
jected. His first is very similar to the third of the defendant
granted and approved of in 76 Md. 123. That portion of it
which refers to "representations set forth in the declaration,"
etc., should have been qualified somewhat, as it is not neces-
sary to prove the exact language used in the representation
and set out in the *narr.*, but proof of it in substance and legal
effect is sufficient, *Weaver* v. *Shriver, supra.* The second is
similar to that approved of in *Weaver* v. *Shriver,* and was in
substance embraced in the Court's instruction. The third and
fifth were calculated to be misleading under the facts of this
case, as offered by the plaintiff. The sixth was properly re-
jected. The evidence relied on in that prayer, if conceded,
did not require the appellee to dispose of the stock he had
purchased, or give him any reason to suppose it would
be worthless. The 8th and one-half goes as far as could prop-
erly be asked, and there was no error in rejecting the seventh
and eighth. The ninth was included in the instruction of the
Court. Without deeming it necessary to discuss them we
think the testimony was sufficient to justify the Court in sub-

mitting the case to the jury and therefore the tenth, eleventh and twelfth prayers were properly rejected.

We will very briefly refer to the exceptions to the testimony. The first was to the question propounded to Mr. Lingenfelder, a director in the bank, as to whether he had ever received anything from the bank, as a stockholder, to which he replied "I have never received any dividend, or any notice that any dividend'was due to me as stockholder." As he had been a stockholder for four or five years, that was relevant as reflecting upon the condition of the bank. Mr. Barron, another stockholder, was asked "Through whom did you buy that stock?" and he replied "From Mr. Cahill." "The same Mr. Cahill who is defendant in this suit?" to which he replied, "Yes, sir." In a case of alleged fraud that might have led up to something that was relevant, as the fraudulent conduct of the defendant of a similar character is admissible to show the *animus* of the particular transaction, *McAleer* v. *Horsey, supra,* and we cannot see how what he was allowed to say prejudiced the defendant. The third, fourth, fifth and sixth exceptions were to the refusal of the Court to allow the appellant's counsel to ask him certain questions on cross-examination when he was called by the plaintiff. As Mr. Cahill afterwards went on the stand, he could have been asked any questions that were relevant and proper and therefore we do not think it necessary to discuss these rulings. The seventh, eighth, ninth.and tenth are not material, and we do not see how the appellant was injured by the rulings concerning them, and hence we will not further discuss them. For the reasons stated, the judgment will be reversed.

> *Judgment reversed, and new trial awarded, costs to be paid by the appellee.*

(Decided January 20th, 1904.)