# CHARLES N. BOULDEN *vs.* WILLIAM T. STILWELL
## ET AL.

*Fraud—Representations as to Future Events—False Statement as to Ownership or Value of Property.*

A false statement respecting a future or contingent event is not such fraud as will constitute the basis of an action of deceit.

When both parties to a contract have equal means of knowing the value of the thing sold a false statement by one relating to its value is not actionable fraud.

When one officer of a corporation falsely tells another officer that he has made a conditional sale of his shares of stock in the concern, and the latter is thereby induced to sell his shares also, that statement is not such a false representation as to an existing fact as will in itself support an action of deceit.

Plaintiff was the secretary and treasurer of a corporation and the owner of certain shares therein. One of the defendants was the president of the corporation and another, L, was the general manager. The president told plaintiff that he was going to sell out his stock to L; that the com-

pany was going to fall down, and advised plaintiff likewise to sell his stock. Afterwards the president told plaintiff that he had sold his stock to L on conditions which were not stated. Certain feigned quarrels between the two defendants took place in plaintiff's presence. The other defendant, L, told plaintiff that he had agreed to buy the president's stock which would give him a controlling interest and that plaintiff would be deprived of his salaried office. Relying upon these representations plaintiff sold his shares to L. The president did not make the sale of his stock to L and a few months afterwards both of the defendants sold to a third party all their shares for a sum considerably greater per share than that paid to the plaintiff. In an action of deceit, *held*, that upon this evidence the plaintiff is not entitled to recover, since the representation made to him that the company was going to fail, that the president was going to sell his stock and that the other defendant would oust plaintiff from his employment, were not statements as to existing facts but declarations as to future and contingent events; and the president's advice to plaintiff to sell his stock and the statement that he had conditionally sold his own were not the kind of representations that the plaintiff, as a person of ordinary business prudence; had the right to rely upon under the circumstances of this case.

Appeal from the Superior Court of Baltimore City (PHELPS, J.)

The letter referred to in the opinion of the Court is as follows:

Baltimore, Md., April 24th, 1901.

Charles N. Boulden, Esq.,
                 City.

Dear Sir: I have sold my stock in the Structural Iron & Steel Co. to J. W. Leroux, subject to the terms and conditions named to him in my proposition of April 12th.

Respectfully yours,
                          W. T. Stilwell.

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*C. Dodd McFarland* and *Howard Bryant,* for the appellant.

The defendants called a meeting, at which plaintiff and defendants were the only ones present, and then it was that a mock quarrel was again had between defendants in the presence of plaintiff, and Stilwell said he had sold his stock to Le-

roux, and that he was out of the company, and that Leroux was to run the whole concern, and then the statement and threats were made, that if plaintiff did not sell his stock and surrender his contract, then he, Leroux, would vote the plaintiff out, and Stilwell had told plaintiff that the company was gone to pieces and was about to fall down, and he would lose his stock; so then under these statements of facts the plaintiff was induced to part with his stock and surrender his contract. Defendants made these statements in the presence of plaintiff and each other for the sole purpose of deceiving plaintiff, knowing at the time that the statements were false. The plaintiff, as a result of said false statements, was induced to part with his stock and to surrender his contract, and he was injured thereby. The defendants, as soon as they had by these false statements gotten possession of plaintiff's stock and his contract surrendered, then boasted of their success, and instead of Stilwell resigning as president and retiring from the company, his salary was increased, also that of Leroux, and then they consummated the sale to the one who had the option, whereby they got twenty-four dollars per share for the common stock and divided it amongst themselves, and then and there got four thousand dollars which rightfully belonged to plaintiff and would have gone to him, except for the fraud and false statements of the defendants.

It seems to us perfectly clear that the Court erred in taking the case from the jury, because it is clearly proven that the statements made by the defendants to the plaintiff were false, that their quarrels were mock, and pretended, and were gotten up to *induce* the plaintiff to part with his stock, and to make a contract that he otherwise would not have made, all to plaintiff's damage and injury. *McAleer* v. *Horsey*, 35 Md. 454: *Buschman* v. *Codd*, 52 Md. 207; *Robertson* v. *Parks*, 76 Md. 131.

*Leon E. Greenbaum* (with whom was *George R. Gaither* on the brief), for the appellees.

In *Robertson* v. *Parks*, 76 Md. on p. 135, the Court held

that an instruction to the jury was proper to the effect that the plaintiff was not entitled to recover on account of any representation made by the defendants to the plaintiff that the stock of the company would pay as much as twenty per cent dividend, or for any other expression of opinion concerning the future value or profit of the business to be carried on. If represeniations as to future profits are immaterial, are not representations as to future losses equally irrelevant? *Caveat vendor* is as much a rule of law as *caveat emptor*, though commercial transactions do not make it necessary to apply it as often. As the Court says in *Byrd* v. *Rautman* (85 Md. 419:) "Buyer's talk must be disregard as much as seller's talk." The defendants are represented to have said not "that the company has fallen down," but that *"it is going to fall down."* Is this not clearly an expression of opinion as to a future event? In the history of most business there comes a period of great uncertainty as to their future, and only the future can determine whether the cheerful hopes of the optimist in the concern, or the gloomy forebodings of the pessimist, are to be realized. Are men to be punished because their prophesies of good or evil are not realized? The appellees submit that a statement that a company is going to fall down is not such a statement of an existing fact to be the basis of an action of deceit. At most it is an error of judgment which is not punished by law. If the foregoing be a true statement of the law, is it not equally true that a statement of Mr. Stilwell, "that he is going to get out," is merely a statement of intention in reference to a future event, and that the fact that he subsequently is still in the company is not sufficient to be the basis of an action for deceit. A man may propose to do a great many things which he subsequently fails to do because of change of conditions or of mind, but such failure does not give rise to a right of action. All the authorities hold that there can be no recovery where the error is simply one of judgment, and the fact that it is an error of judgment is made abundantly clear, when Leroux's language is analyzed. He says the company "is going to fall down." "Going" is

clearly a prediction as to the future, and constantly are similar assertions made in reference to firms and corporations which, subsequently by the introduction of fresh capital or energy, or by the payment of doubtful bills receivable, take on new life and strength. In this case no evidence is introduced to show whether conditions continued or changed, no evidence to show that Leroux did not make an honest conclusion from the data before him, and yet it is attempted to penalize him for the failure of his prediction to be realized.

It is submitted that every other part of the statement is of exactly the same character with the exception of the part dealing with the presentation of the paper. Boulden says he sold out because "the letter found on p. 8 of the record was shown him." The appellees desire to call attention in the first place to the fact that on the same page Boulden says he was induced to sell by reason of the fact that both Leroux and Stilwell were selling out. Now he says it was because Stilwell was selling out to Leroux. Admitting, however, that the sale was a matter of fact, it is submitted that in an analogous case, *Cahill* v. *Applegarth*, 98 Md. 493, it has been decided that a false representation concerning real ownership of stock would not justify a recovery. Was there, however, any false representation as to sale? Boulden says he based his sale on Stilwell's sale, and that he formed his opinion of Stilwell's sale from Stilwell's letter, and yet the letter, does not purport to set forth an absolute sale, but only a conditional sale, and there is not a scintilla of evidence as to whether the conditions were precedent or subsequent, or whether they have ever to this day been complied with? *Non constat*, but that Mr. Leroux did not pay for the stock because he could not raise the money or because he could not comply with some other of the undisclosed conditions, and therefore Mr. Stilwell naturally will not part with his stock. The letter does not purport to state that there had been a transfer of stock or even an absolute sale. Boulden does not testify that he inquired at the time of his sale or even now knows what the conditions were. The proposition of April 12th, referred to in the letter of Stil-

well, is not in the record, and the jury could not be allowed to guess as to its contents. Are not many sales made which result in failure of deliveries? Certainly a sale is technically not a delivery, and all that the letter purports to show is an offer and acceptance on terms, and no evidence is offered in reference to the terms. What evidence has been offered to show that there was not a delivery of the stock so sold? Merely evidence that Mr. Stilwell was president of the company some time after the sale.

What possible inconsistency is there between a sale of stock and a subsequent holding of the presidency of the company? *Non constat*, but that the stock was not delivered until after the time when Mr. Stilwell resigned the presidency, or that no transfer was made of the stock up to that time, or that Mr. Stilwell bought other stock. Indeed, as a matter of fact, it does expressly appear in the evidence that Mr. Stilwell did buy other stock from other persons subsequent to Boulden's sale. The appellees contend that from the foregoing summary of testimony, it is clear that there is no evidence in the record that at the time of Boulden's sale, Stilwell did not intend to get out of the company, or that the company was in other than a falling condition, or that he had not made the character of sale of stock, which his letter sets forth. Even admitting, however, the falsity of all the statements, it is submitted that they are not sufficient to give the plaintiff a cause of action, because the only statements of fact alleged to have been made are not material.

The state of facts presented by the record in this case is very similar to that presented in *Melville* v. *Gary*, 76 Md. 221, in which case the jury were instructed to find for the defendant and in which this Court said that conditional promises made without consideration are not sufficient to be the basis of an action for deceit. As the Court said in *Byrd* v. *Rautman*, 85 Md. on p. 419 (another case presenting matters similar to the one at Bar), a plaintiff cannot ask to be relieved from the consequence of his own folly or fault. The real question is whether by facts or figures Boulden was deceived as to the

value of his stock; all else is immaterial, and it must be borne in mind that Boulden no where states that Stilwell was so valuable a man in the company that his (Stilwell's) getting out would in itself lessen the value of Boulden's stock one dollar.

Even if all the foregoing is erroneous, nevertheless the plaintiff is not entitled to recover if the plaintiff had at hand the means to ascertain the truth of the alleged false representations, or was in as good a position as the appellees to find out the facts, and form his own conclusions. *Buschman* v. *Codd*, 52 Md. 208; *Robertson* v. *Parks*, 76 Md. 118; *Weaver* v. *Shriver*, 79 Md. 530.

The very fact that the vendees were paying for stock which, according to Boulden, was said to be worthless, was in itself sufficient to put on guard a man in Boulden's position and with the intelligence which, for the purpose of an action of deceit, he is, in the eyes of the law, conclusively presumed to have had. Men are not ordinarily anxious to buy stock in insolvent corporations, nor do men of ordinary intelligence make sales based upon statements of insolvency when they are officers in the same concern in which the vendees are.

It is clear that besides misrepresentation fraudulently made and honestly and intelligently accepted, damages must be sustained in order to entitle a recovery. There is not a scintilla of evidence anywhere in the record as to what the stock was worth in dollars and cents at the time of this sale, in the middle of April, 1902, and therefore nothing at all to base a verdict on.

In *Smith* v. *Bolles*, 132 U. S. 125, the Supreme Court, says: "What the plaintiff might have gained is not the question, but what he had lost by being deceived into the purchase. Liability does not include the expected fruits of an unrealized speculation." *This is exactly what Boulden now claims; loss of speculative profits for an investment of nothing.* To the same effect see *Loewer* v. *Harris*, 57 Fed. Rep. 369.

PEARCE, J., delivered the opinion of the Court.

The plaintiff in this case complains that by means of certain false and fraudulent representations made to him by the defendants, he was induced to sell to Leroux, one of the defendants, certain stock held by the plaintiff in the Structural Iron and Steel Company of Baltimore City, whereby he has sustained damage.

The declaration, in substance, alleges that Stilwell was psesident, and Leroux vicē-president and general manager of the company, each holding a large number of shares therein; that plaintiff was acting secretary and treasurer, holding two hundred and fifteen shares therein; that defendants, desiring to obtain from the plaintiff his said shares of stock at a less sum than their real value, entered into a conspiracy, fraudulent combination, and arrangement between them, by which defendant, Stilwell, should represent to the plaintiff that he had sold his shares of stock in said company to Leroux; that the company was losing money; that it was about to "fall down," meaning thereby that it was about to fail and become insolvent; that he, Stilwell, would not carry it financially much longer; that Leroux should represent to plaintiff that he had bought Stilwell's stock, which would give him a majority of the stock in the company, and would result in removing plaintiff from his employment in the company; that these representations were made to him by the defendants in pursuance of said conspiracy, and by reason thereof he was induced to sell and deliver his two hundred and fifteen shares of stock for $5,625, whereas they were of the value of $21,500, which value was then unknown to him, and of which he had no means of knowledge, though such true value was then known to defendants; that these representations were falsely and fraudulently made, with intent to deceive and defraud him, and did so deceive and defraud him, and that if the same had not been so made and relied on, he would not have sold his stock, and that by means of the premises he had sustained damage to the extent of $15,850.

The general issue plea was filed, and at the close of the

plaintiff's testimony, the defendant moved the Court to strike out certain evidence which had been admitted subject to exception, which motion was granted, and thereupon the Court granted a prayer offered by the defendant, that there was no evidence legally sufficient to entitle the plaintiff to recover, and that the verdict must be for defendants.   The single exception is to the granting of this motion and prayer, and in considering the instruction given, which will be first taken up, we are required to assume the truth of all the plaintiff's evidence, and all inferences fairly deducible from it.

The general principles which must control our judgment in this case, have been established in a series of cases in Maryland, the most important of which are, *McAleer* v. *Horsey*, 35 Md. 439; *Buschman* v. *Codd*, 52 Md. 202; *Robertson* v. *Parks*, 76 Md. 118; *Byrd* v. *Rautman*, 85 Md. 414; *Cahill* v. *Applegarth*, 98 Md. 493.   When the decision in *McAleer* v. *Horsey* was rendered, it was there said that we then had for our guidance, no express decision of this Court upon several points involved, but that decision has ever since been regarded as a notable contribution to the learning upon this subject, and later cases have covered almost every point likely to arise in such actions.   Most of these decisions have been made in cases where damages were claimed as the result of *purchases* induced by false and fraudulent representations, but there can be no good reason why *sales*, so induced, and resulting in damage, should not be governed by the same principles, and these have been so applied in this State in *Byrd* v. *Rautman, supra.*

In *McAleer* v. *Horsey*, JUDGE MILLER observed that "neither the common law, nor any code of human laws, seeks to enforce the rule of perfect morality declared by divine authority, which acknowledges as its one principle, the duty of doing to others as we would that others should do to us, and which, by consequence, absolutely excludes and prohibits all cunning and craft, or astuteness, practiced by any one for his own exclusive benefit.   And it hence follows that a certain amount of selfish cunning passes unrecognized by Courts of justice,

and that a man may procure to himself, in his dealings with others, some advantages to which he has no moral right, but to which he may succeed in establishing a perfect legal title." In determining, in each case, whether the fraud complained of is one which falls within the class above described, or within that other class which Courts of Justice will recognize and redress, "by stepping in and annulling what has been done, or rectifying the wrong by sustaining an action for the deceit," we must be governed by certain precedents and rules which have been established as the result of all the cases, and which in general terms may be stated as follows:

. The foundation of the action is actual fraud, and nothing short of this will suffice. Consequently, a misrepresentation believed by the speaker to be true, though induced by his ignorance or negligence, will not sustain an action for deceit. There must be, either knowledge of the falsity of the representation, or such reckless indifference to truth in making it, as is held equivalent to actual knowledge. The fraud must be material, by which is meant that without it, the transaction would not have been made. It must be a statement of an alleged existing fact, or facts, and not merely of some future or contingent event, or an expression of opinion as to the subject of the statement. The party to whom it is made must rely upon its truth, and must have the right, as a person of ordinary business prudence, to rely upon it, "otherwise it is his own folly or fault, for the consequences of which he cannot ask relief of the law; " and finally there must be damage directly resulting from the fraud. Nearly all the Maryland cases, and a number of the leading English cases, have been carefully considered in the recent case of *Cahill* v. *Applegarth, supra,* and there is no occasion to review them here. Keeping in view the principles stated above, we will now briefly consider the testimony upon which this case was withdrawn from the jury.

In support of the averments of the *narr.* a summary of which we have given, the plaintiff testified that in June, 1900, while he was employed by the receivers of the Columbian Dry

Dock and Iron Works Company, having been with that company for twenty-four years previously, Stilwell proposed to him to go with a company which he and Leroux were about to re-organize as the Structural Iron and Steel Company, and said, if he would go with them they would appoint him secretary and treasurer, at the same salary they received; "each one of the three also to share and share alike in all profits, emoluments, &c.;" that he accepted the offer, and a written agreement was entered into between them covering the offer, and assuring him the position for five years at a salary of $50 per week; that he put $5,000 in the company, representing fifty shares of preferred stock at par, with which he received, as a bonus, 165 shares of common stock; that the company had quite a number of government contracts, and things went on pretty well until the spring of 1901, when Stilwell and Leroux had several quarrels in his presence, in which each threatened to get out the company, and which he then thought real quarrels, but which he afterwards learned were mock, or feigned quarrels intended to deceive and frighten him into getting out of the company; that in April, 1901, Stilwell told him that he was going to sell out to Leroux, that the company was going "to fall down," and that as he had gotten him into the company and was his friend, he did not want him to remain in a company that was going "to fall down," and handed him a letter, signed by himself, and addressed to plaintiff, informing him that he had sold his stock to Leroux on the terms stated in his proposition of April 12th, and he then repeated his advice to plaintiff to get out. Plaintiff then saw Leroux, who said he had agreed to buy Stilwell's stock, which would give him a controlling interest; that the business was not productive enough to pay three salaried officers, and that he intended to run it as a family company. He told plaintiff this was his last opportunity to accept his offer, and that in reliance upon these statements he accepted the offer, and got out, receiving from Leroux for his 215 shares of stock $5,650 in cash, of which, $5,000 was the par value of his 50 shares of preferred stock, and $650, was to compensate him

for loss to that amount in the sale of some houses which he had sold to raise the money to pay for his stock when he took it, the 165 shares of common stock not being reckoned as of any value, and going with the 50 shares, as he had received it; that he subsequently learned that Stilwell never sold out to Leroux, but that he furnished Leroux the money paid him for his stock, and that after this sale, Stilwell and Leroux continued to be, respectively, president and vice-president, and added to their salaries each, one-half of the salary he had received. The damage of which he complained was the loss of four years salary under his contract at $2,600 per annum, and $24 per share on his 165 shares of common stock sold by Stilwell and Leroux to Keith some five or six months later, besides *one-third* interest in the sale of the other stock, though it is difficult to understand the last item, as he claimed *all* the price of the 165 shares, and actually received *all* the price of the 50 preferred shares.

In reply to the direct question from his counsel, "What induced you to sell your stock?" he replied, "The representations made to me at that meeting that the company was going to fall down, and that Mr. Stilwell was going to get out, and the presentation of that paper, and the advice of Mr. Stilwell to get out while I could, and the offer of Mr. Leroux, and the conditions which would exist, if Mr. Stilwell sold his stock to Leroux, giving Leroux controlling interest, and his telling me then and there he would vote me out, now is your chance; take your money or we will put you out, and leave your money in the company; you can do as you please."

Plaintiff also testified that Stilwell and Leroux would not permit him to open a set of books for the new company until six months after it was in operation, and that when opened, they were required to be three months in arrears and by reason of this, he did not know and could not ascertain the condition of the company. He admitted on cross-examination that the agreement mentioned was cancelled by mutual agreement when he sold his stock, and that was induced by the same reasons which caused him to sell his stock.

Mr. Baker and Mr. Oches, who were respectively, the assistant, and principal book-keepers during 1901, testified that Stilwell and Leroux continued to be respectively president and vice-president of the company until January, 1903, and that their salaries were increased as before stated after plaintiff got out.

George C. Gantz testified that he owned 50 shares of preferred, and 30 shares of the common stock, which he sold in July, 1901, through Stilwell for $5,050 cash, but did not know who bought them, and that he sold because Stilwell alarmed him by saying the company was losing money. He also said Stilwell told him he and Leroux had feigned quarrels in plaintiff's presence, for the purpose of inducing him to sell his stock and get out of the company, and that he furnished Leroux the money paid him for his stock.

Minor C. Keith testified that some time in the fall of 1901, he purchased from Stilwell and Leroux, a large block of both preferred and common stock of the company, and through them, all the residue of both kinds of stock, paying par for the preferred, and about $24 per share for the common; that they always spoke favorably as to the financial condition and future business of the company, and represented that its asssets were sufficient to cover the total issue of preferred stock, and something, but not very much, on the common stock; that they furnished him a number of written statements, showing that the assets and liabilities were about even, but there were many bad debts, and that he understood afterwards there was a deficit; that some of the representations made to him, afterwards proved not to be true, but he thought they were misled in making them.

When the representations which plaintiff states caused him to cancel his contract and sell his stock, are analyzed, it will be seen that none of them measure up to the requirements of the law. The representation that the company was going to fall down, is not a statement of existing insolvency, but a prediction of future insolvency, and comes directly within the ruling in *Robertson* v. *Parks*, 76 Md. 135, where it was held that

representations concerning the future value or profitableness of the business should be excluded by the jury as a basis of recovery, and as defendants counsel well said in their brief in this case, "caveat vendor," is as sound a rule of law as "caveat emptor," though less frequently invoked. So, Stilwell's declaration that he was going to get out, and that Leroux would vote Boulden out are but declarations of future purpose subject to change of mind, and the advice of Stilwell and Leroux to accept the last chance to get his money was but "buyers talk," which, in *Byrd* v. *Rautman, supra*, it was said should not be regarded. Even Stilwell's letter stating he *had* sold his stock to Leroux, so much relied on as a statement of an existing fact, comes within the category upon which plaintiff was not authorized to rely as the basis of an action for deceit, since in *Cahill* v. *Applegarth, supra*, it was said that a false representation merely as to the ownership of stock would not justify a recovery. It should have been obvious to the plaintiff that if Leroux could with safety, not only hold his own stock, but also purchase Stilwell's at par, he could, at least with equal safety, hold his stock, and that he could not blindly accept Stilwell's prediction that the company was about to fail. Nor is it material whether the money paid him for his stock was supplied by Stilwell or Leroux. In either event he was selling his stock at a premium in a company which his purchaser predicted was about to fail. He was secretary and treasurer of the company, and had at least equal means of knowledge as to its condition and prospects, and although the books were not up to date, this was a disadvantage common to all three of the parties, and it must be held his own lack of business prudence, and business courage, which caused him to cancel his contract and sell his stock under the circumstances stated.

In *Buschman* v. *Codd, supra*, the case of *Vernon* v. *Keyes*, 12 East. 632, was cited with approval upon the point that where parties have equal means of knowledge as to the truth of representations relating to value or quality of the thing sold, no action for deceit will lie; and again in *Byrd* v. *Rautman*, it

was cited, to show that a false representation as to a future event would not sustain an action.   In *Vernon* v. *Keyes*, the defendant represented to the plaintiff, his partner, that he was about to form a partnership with other persons whom he could not disclose, and that they desired to buy the plaintiff's interest in the existing business, but that his intended partners would not give more than a certain sum, which the plaintiff, in reliance upon this statement, accepted; whereas the new partners had not refused to give more than that sum, but had authorized defendant to make the best terms he could, and he had in fact charged them a much higher sum than plaintiff had received.   LORD ELLENBOROUGH held that the buyer was not liable in an action of deceit for thus misrepresenting the seller's chance of sale, or the probability of his getting a better price than that offered by the buyer, and that it was the seller's indiscretion to rely upon such statement.   That case seems to be quite conclusive of the present, as to the reliance to be placed upon the representations here made.   But there are other objections to the plaintiff's recovery, touching the proof of damage sustained.  There is no proof that the defendants knew at the time plaintiff sold his stock, that the common stock could be sold to Keith, or to any one, for anything worth consideration, or even that the preferred stock could be sold for what they paid for it, for proof of value in September, is no proof of equal value in the preceding April.

In this aspect of the case, plaintiff's claim for damages is merely a claim for future contingent profits on the common stock, and as was said in *Smith* v. *Bolles*, 132 U. S. 12, which was an action for deceit, "Liability does not include the expected fruits of an unrealized speculation."   In the view we take of this case, the result would not be altered, if the testimony which was stricken out had remained in, and it is therefore unnecessary to consider the ruling upon the motion to strike out.   This case is a practical illustration of the instances referred to by JUDGE MILLER, in which a man "may succeed in establishing a perfect legal title to advantages to which he

has no moral right" if the testimony at this stage of the case, is assumed to be true, as it must be.

> *The judgment is affirmed with costs to*
> *the appellee above and below.*

(Decided March 22nd, 1905.)